# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

### CASE NO.: 3:12-cv-1173-TJC-TEM

SAMUEL ROSS, individually, and on
behalf of all others similarly situated,

     Plaintiff,

v.                                                     **CLASS ACTION**

CITIFINANCIAL AUTO, LTD.,

     Defendant.

_____/

## MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION AND DISMISS PLAINTIFF'S CLAIMS

Plaintiff, Samuel Ross, an individual ("Mr. Ross"), on behalf of himself and all others similarly situated, by and through his undersigned attorneys, pursuant to Rule 3.01, Local Rules of the United States District Court, Middle District of Florida, files this his memorandum of law in opposition to the Motion to Compel Arbitration and Dismiss Plaintiff's Claims filed herein by Defendant, CitiFinancial Auto, Ltd., a Minnesota corporation ("CitiFinancial") [DE 10], bearing certificate of service date November 15, 2012:

## INTRODUCTION

Mr. Ross signed two contracts in the process of buying a car, a buyer's order and a subsequent retail installment sales agreement. Neither contract contains an arbitration provision. The installment agreement states that it "contains the entire agreement" between the parties. CitiFinancial does not dispute these facts. But it now asks this Court to compel arbitration based upon a loan application it claims Mr. Ross signed six days before an actual contract was

-1-

executed, because that loan application supposedly contained an arbitration clause. CitiFinancial asks this Court to ignore that:

- The loan application is just that, an application, and not a contract;

- CitiFinancial does not have a copy of the application that contains the arbitration provision it invokes;

- Mr. Ross then signed a buyer's order to purchase the car, and that executed contract does not contain an arbitration clause;

- Mr. Ross contemporaneously signed a retail installment sales agreement ("RISC"), and that subsequently executed contract does not contain an arbitration clause either; and

- The RISC contains a merger clause, expressly limiting the parties' agreement to the four corners of that contract.

There is no case anywhere that holds a previously executed loan *application* containing an arbitration clause to supercede two subsequently executed *contracts*, neither of which mention arbitration, and which are governed by a merger clause cementing the terms of the contract in stone. CitiFinancial nevertheless asks this Court to be the first to so hold. For the reasons outlined above, and detailed more fully below, CitiFinancial's motion is completely groundless.

## <u>OVERVIEW OF PROCEEDING</u>

The instant case involves claims by Mr. Ross against CitiFinancial for violation of Florida law concerning the repossession of automobiles under Article 9, Part VI of the Uniform Commercial Code ("UCC"), Florida Statute §679.671, *et sequi*. According to the allegations of the Complaint, CitiFinancial failed to provide the statutorily mandated notice of sale subsequent

to the repossession of the vehicle of Mr. Ross. Accordingly, Mr. Ross seeks statutory damages and other relief against CitiFinancial on a class-wide basis under the civil remedies provision of Florida Statute §679.625.

In response to the Complaint, CitiFinancial filed *inter alia* Defendant's Motion to Compel Arbitration and Dismiss Plaintiff's Claims, bearing certificate of service date November 15, 2012 ("Motion to Compel Arbitration") [DE 10]. In support of its Motion, CitiFinancial attached a document entitled "Credit Application," purportedly dated May 6, 2006 ("Disputed Credit Application"). According to CitiFinancial, the claims of Mr. Ross are subject to the arbitration provision ("Purported Arbitration Provision") contained in the Disputed Credit Application.

In opposition to the Motion for Arbitration, Mr. Ross has filed the Declaration of Samuel Ross ("Ross Declaration"). As set forth in the Ross Declaration, on May 12, 2006, Mr. Ross went to Mike Shad Chrysler-Jeep dealership ("Mike shad Chrysler" or "Dealership") at 1736 Cassat Avenue, Jacksonville, Florida 32210, for the purpose of purchasing a used vehicle for his personal and household use (Ross Declaration - ¶ 2). At the aforementioned time, Mr. Ross purchased a used 2006 Chrysler 300 automobile, VIN: 2C3KA43R76H265286 ("Vehicle") [Ross Declaration - ¶5].

As detailed in the Ross Declaration, Mr. Ross has reviewed the Motion to Compel Arbitration and the attached Disputed Credit Application in detail. While the Disputed Credit Application appears to have the signature of Mr. Ross, Mr. Ross does not recall having signed the document [Ross Declaration - ¶ 4]. Mr. Ross does not recall having been to Mike Shad Chrysler on the alleged date of the Disputed Credit Application — May 6, 2006 — as he

-3-

purchased the Vehicle on May 12, 2006 [ Ross Declaration - ¶¶10-11]. Indeed, the Disputed Credit Application itself does not even identify the name of the automobile dealership as the space for designating the name of the recipient of the application is blank [Motion to Compel Arbitration - Exhibit A-1]. Assuming that the Disputed Credit Application is a genuine document, Mr. Ross did not receive a copy of it and has absolutely no idea whether the document that was signed had a second page containing the Purported Arbitration Provision which is the subject of the Motion to Compel Arbitration [Ross Declaration - ¶4].

As set forth in the Ross Declaration, the uncontroverted facts demonstrate that Mr. Ross purchased the Vehicle from Mike Shad Chrysler on May 12, 2006 — nearly a week after the Disputed Credit Application [Ross Declaration - ¶5]. In furtherance of his purchase and financing of the Vehicle, Mr. Ross executed and delivered to the Dealership the following documents:

- Retail Purchase Agreement, dated May 12, 2006 ("Buyer's Order") - attached as Exhibit "A" to the Ross Declaration; and

- Retail Installment Sale Contract - Simple Finance Charge ("RISC") - attached as Exhibit "B" to the Ross Declaration.

In the Motion to Compel Arbitration, CitiFinancial asserts that the Disputed Credit Application contained the Purported Arbitration Provision. However, CitiFinancial did not produce a complete copy of the Disputed Credit Application in this proceeding — specifically the second page which contained the Purported Arbitration Provision. Incredibly, CitiFinancial seeks to enforce the Purported Arbitration Provision despite the fact that its own records do not contain a complete Disputed Credit Application.

The RISC did not contain an agreement to arbitrate above but, rather, contained a so-

called "merger" provision:

**HOW THIS CONTRACT CAN BE CHANGED.**  This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing. No oral changes are binding.

Buyer signs <u>X                    </u>        Co-Buyer signs <u>X                    </u>

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them.  For example, we may extend the time for making some payments without extending the time for making others.

**See back for other important agreements.**

("Merger Provision")
[emphasis in original]

The Merger Provision was important to the Dealership. So important that the Dealership had Mr. Ross sign the provision to denote this understanding that the entire agreement of the parties was set forth in the RISC and no other document.

Under Florida law, the Disputed Credit Application does not control the parties' relationship once the RISC had been executed. Indeed, under similar facts, the Florida 1st District Court of Appeal in the recent decision of *Duval Motors Company v. Rogers,* 73 So.3d 261 (Fla.1st DCA 2011), held that a buyer's order (which is a contract as opposed to a mere credit application), which contained an arbitration clause, was not a valid change to a subsequently executed finance agreement. More recently, in *Solymar Investments, Ltd. v. Banco Santander, S.A.*, 672 F.3d 981 (11th Cir. 2012), the Eleventh Circuit held that an agreement which was complete on its face — one which contained an arbitration provision — proscribed further

inquiry into extraneous parol evidence.  The *Duval Motors, Solymar Investments* and other like decisions together with the substantial legal and policy arguments supporting them are discussed more fully below.

## SUMMARY OF ARGUMENT

The argument of Mr. Ross can be summarized as follows:

I.      The Disputed Credit Application was superceded by the RISC for a credit purchase of the Vehicle.

II.     The parol evidence rule bars enforcement of the Purported Arbitration Provision in the Disputed Credit Application.

III.    The Purported Arbitration Provision of the Disputed Credit Application is superceded by the RISC under the doctrine of merger.

IV.     The Florida Motor Vehicle Sales Finance Act, Florida Statute §520.01, *et sequi* — which regulates installment sales such as the Vehicle purchase — mandates that the retail installment sale contract be complete as to all essential provisions, including arbitration if the parties so intended.

## LEGAL ARGUMENT

### I.  THE RETAIL INSTALLMENT SALE CONTRACT SUPERCEDED ANY PRIOR AGREEMENT TO ARBITRATE.

#### A.   CitiFinancial cannot compel arbitration under either the Federal Arbitration Act or the Florida Arbitration Code unless a valid agreement exists with respect to arbitration.

*1.  Application of the Federal Arbitration Act*

The purpose of the Federal Arbitration Act ("FAA") is to "place arbitration agreements

upon the same footing as other contracts." *Gilmer v. Interstate/ Johnson Lane Corporation*, 500 U.S. 20, 24 (1991). The FAA provides that a written arbitration provision governing a contract involving commerce, "shall be valid … save upon any grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2 . Fully consistent with the FAA, arbitration agreements may be challenged and invalidated on any applicable state contract principle. The United States Supreme Court has expressly stated that state contract law defenses — such as contractual intent, unconscionability, and the parol evidence rule — are available to a party challenging an arbitration agreement. See, *Doctor's Assoc. v. Casarotto*, 517 U.S. 681, 687 (1996) ("Generally applicable contract defenses, such as unconscionability, may be applied to invalidate arbitration agreements without contravening the Federal Arbitration Act."); *Greentree Financial Corporation v. Randolph*, 531 U.S. 79, 121 S.Ct. 513 (2000) (the initial point of inquiry is whether a valid agreement to arbitrate exists between the parties); *Chastain v. Robinson - Humphrey Company, Inc.*, 957 F.2d 851 (11th Cir.1992); *Solymar Investments*, 672 F.3d at 989 (application of Florida law concerning parol evidence rule in determining enforcement of arbitration provision).

In *Chastain*, the Eleventh Circuit determined that a court must decide whether a non-signatory party can be bound by the language of a contract, as opposed to an arbitrator. The father of the plaintiff, Brenda Chastain, had opened a securities trading account with a stock brokerage firm, allegedly on behalf of his daughter. Two customer agreements were signed, the first bearing the name of Brenda Chastain. It was undisputed that Brenda Chastain did not personally sign the agreement which contained an arbitration clause. Id.

After Brenda Chastain filed her action, the brokerage firm moved the district court to

compel arbitration. In response, Ms. Chastain argued that she did not agree to the contract or the arbitration clause, as her signature was a forgery. The district court denied the application to compel arbitration by the brokerage firm. In particular, the Court stated:

> The Federal Arbitration Act governs the question of who must decide the issues of arbitratability. Under the Act, a district court must compel arbitration if the parties have agreed to arbitrate the dispute. 9 U.S.C. §2, 3 (1988). However, if the validity of the agreement to arbitrate is an issue, a district court, not a panel of arbitrators, must decide if the arbitration clause is enforceable against the parties. Id. §4; See, also, *Prima Paint Corp. v. Flood and Conklin Manufacturing Company*, 388 U.S. 395, 403-04, 87 S. Ct. 1801, 1806, 18 L.Ed. 2d 1270 (1967) (holding that if the making of the arbitration agreement is at issue "the federal court may proceed to adjudicate it"). Simply put, parties cannot be forced to submit to arbitration if they have not agreed to do so. *Volt Info. Services, Inc. v. Board of Trustees*, 489 U.S. 468, 479, 109 S.Ct. 418, 419 (11th Cir. 1990) (*per curiam*). Thus, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corporation v. Soler Chrsyler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.E.D. 2d 444 (1985).

Thus, the question of whether a binding arbitration agreement exists is a question for the trial court to determine, not an arbitrator. As detailed below, CitiFinancial fails to recognize that the RISC — the final expression of the bargain between the parties — superceded the Disputed Credit Application, including the Purported Arbitration Provision allegedly contained therein. This position is especially compelling in light of the Merger Provision contained in the RISC. Accordingly, any attempt to compel arbitration is contrary to the clear contractual language of the RISC.

### 2.   Application of Florida Arbitration Code

§682.03(1), Florida Statutes provides:

> A party to an agreement or provision for arbitration subject to this law claiming the neglect or refusal of another party thereto to comply therewith may make application to the court for an order directing the parties to proceed with

arbitration in accordance with the terms thereof. If the court is satisfied that no substantial issue exists as to the making of the agreement or provision, it shall grant the application. If the court shall find that a substantial issue is raised as to the making of the agreement or provision, the issue shall summarily hear and determine the issue and according to its determination, shall grant or deny the application.

Florida Statutes §682.03(1)

The Florida 4th District Court of Appeal in *Jalis Construction, Inc. v. Mintz*, 724 So.2d 1254 (Fla.4th DCA 1999), specifically held that if a party opposing arbitration asserts that the arbitration agreement is unenforceable, the trial court errs in deciding a motion to compel arbitration before making the determination whether a valid arbitration agreement exists. The requirement of an evidentiary hearing is "mandatory." 724 So.2d at 1255, *Houchins v. King Motor Company of Fort Lauderdale, Inc.*, 906 So.2d 325, 329 (Fla.4th DCA 2005).

### B.   In considering a motion to compel arbitration, the trial court is required to apply a three-prong test to determine the enforceability of an arbitration provision.

In reviewing a motion to compel arbitration, there are three elements that the trial court must consider: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitratable issue exists, and (3) whether the right to arbitration was waived. *Seifert v. U.S. Home Corporation*, 750 So.2d 633, 636 (Fla. 1999); *Tandem Healthcare of St. Petersburg, Inc. v. Whitney*, 897 So.2d 531 (Fla. 2nd DCA 2005).

Through the Motion to Compel Arbitration, CitiFinancial believes that the only issue for the court to consider is whether a valid written agreement to arbitrate existed between the parties. For purposes of the instant brief only, Mr. Ross will acquiesce to the position of CitiFinancial. On this point of dispute, CitiFinancial asserts that the Purported Arbitration Provision contained

in the Disputed Credit Application somehow survives the clear, unambiguous contractual language of the subsequently-executed RISC. As detailed below, CitiFinancial ignores the basic tenets of contract interpretation.

### C.  The Disputed Credit Application was wholly superceded by the subsequently-executed contract for the credit sale of the Vehicle, the RISC.

#### 1.  Agreements to arbitrate are still just contracts and should be enforced as such.

Arbitration is a creature of contract. One cannot force another to arbitrate a dispute unless a contract exists between them and the contract contains an arbitration clause. *See, Dunn Indust. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 435 (Mo.2003). The RISC was clearly and unequivocally designated the complete and exclusive statement of the parties' agreement for the purchase of the Vehicle.

As the uncontroverted evidence demonstrates, Mr. Ross first signed a contract to purchase the subject vehicle for cash — the Buyer's Order [Ross Declaration - ¶6].  Mr. Ross subsequently signed another agreement — the RISC — for the credit purchase of the same vehicle, over time [Ross Declaration - ¶¶ 8-9].  The cash sale contract and installment sale contract were separate, stand-alone contracts. The installment contract completely replaced and superceded the cash sale contract. Each agreement superceded any other agreement — including any agreement to arbitrate (if such an agreement did in fact exist). Neither the Buyer's Order nor the RISC has any requirement that the parties arbitrate disputes.

#### 2.  The RISC Should Be Enforced as Written

As a point of fact, nowhere in the RISC (or the Buyer's Order) is there any mention at all of arbitration. This glaring absence is emphasized by specific reference throughout the contract to

other documents:

> \*            \*            \*            \*            \*

>**5.  Used Car Buyers Guide.**   The information you see on the window form for this vehicle is part of the contract. Information on the window form **overrides** any contrary provisions in the contract of sale.

> [emphasis added by Plaintiff]

>**6.  Optional Service Contracts.**
>You are not required to buy a service contract to obtain credit. Your choice of service contract providers for any service contracts you buy will not affect our decision to sell or extend credit to you.

> [RISC - p.2]

The Dealership could have, but did not, insert language in the retail sales contract

requiring arbitration of disputes thereunder. For instance, under Paragraph 3c, the RISC provides:

>**You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's fee and **court costs** as the law allows. This includes any attorneys' fees we incur as a result of any bankruptcy proceeding brought by or against you under federal law.
> [RISC - p.2]

> ("Litigation Cost Provision")
> [emphasis added by Mr. Ross]

The Litigation Cost Provision would have been a logical spot to mention arbitration as the forum

for disputes — as opposed to a "court" — had the Dealership wished to do so. Indeed, by use of

the words "court costs," the drafter of the RISC — the Dealership — implicitly contemplated

that proceedings in court rather than arbitration would resolve any disputes between the parties.

It is indisputable that the express terms of the RISC declare it the superceding, controlling

contract, the final expression of the parties' agreement. CitiFinancial's argument that the

Disputed Credit Application was still operative is belied by clear contractual language.

-11-

## II.  THE PAROL EVIDENCE RULE BARS ENFORCEMENT OF THE PURPORTED ARBITRATION PROVISION IN THE DISPUTED CREDIT APPLICATION.

As referenced above, the Florida 1st District Court of Appeal addressed almost identical facts to those presented in the instant proceeding in the recent case of *Duval Motors Company*. *Duval Motors Company*, 73 So.3d 261 at 263-266.  In *Duval Motors Company*, the arbitration agreement appeared in a second document — a buyer's order — which was signed the same day.  Id. at 264.  As with the Ross transaction, the buyer entered into a separate finance agreement that contained a merger clause with the same identical language as that of the finance agreement signed by Mr. Ross.  Id. However, unlike the transaction here, the buyer's order in *Duval Motors Company* contained an arbitration provision. Additionally, unlike the Disputed Credit Application at issue herein, the Buyer's Order was signed on the same day as the finance agreement.

The Florida 1st District Court of Appeal followed the three prong test established by the Florida Supreme Court in *Seifert v. US Home Corporation*, 750 So.2d 633.  Id. at 265.  In its analysis, the Court stated:

> Interpretation of a contract begins with its plain language.  *Taylor v. Taylor*, 1 So.3d 348, 350 (Fla. 1st DCA 2009).  As a general rule, evidence outside the contract language, which is known as parol evidence, may be considered only when the contract language contains a latent ambiguity.  *Wheeler v. Wheeler, Erwin & Fountain, P.A.*, 964 So.2d 745*, 749* (Fla. 1st DCA 2007); *Jenkins v. Eckerd Corp., 913 So.*2d 43, 52-53 (Fla. 1st DCA 2005).  Parol evidence includes "a verbal agreement or other extrinsic evidence where such agreement was made before or at the time of the instrument in question." *J.M. Montgomery Roofing Co. v. Fred Howland, Inc.,* 98 So.2d 484, 485 (Fla. 1957).  The parol evidence rule precludes consideration of such evidence "to contradict, vary, defeat, or modify a complete and unambiguous written instrument, or to change, add to, or subtract from it, or affect its construction."
>
> Id.

In determining that the merger clause contained in the finance agreement proscribed consideration of an extrinsic arbitration provision, the Court further stated:

> This conclusion does not end our inquiry because Appellant argues that, even if the RISC is a fully integrated contract, the RBO constitutes a valid change to it. This argument is based on the merger clause's statement that "any change to this contract must be in writing and [the parties] must sign it." We do not agree that the RBO constitutes a valid change to the RISC because nothing in the RBO indicates that it was intended as a modification of a pre-existing contract, and the parol evidence rule excludes evidence of other prior or contemporaneous agreements.  Rather than indicating that it is a subsequent modification to the RISC, the RBO indicates that it was signed before the RISC, as it states, "The retail installment sales contract ("RISC") *to be entered between Dealer and Customer*, unless otherwise indicated in writing by Dealer, shall be immediately assigned by Dealer to a bank/finance company ... which shall then be the creditor to whom Customer shall be obligated under the RISC." (emphasis added). Because the RBO indicates on its face that it was signed before the RISC, it cannot be considered a "change" to the contract as that term is used in the merger clause; instead, the language in the RISC indicating that the RISC constitutes the entire agreement controls.
>
> <u>Id</u>. at 268-269

As referenced above, the facts here are nearly identical to that presented in the *Duval Motors Company* case.  Both transactions involve a separate buyer's order and finance agreement.  Both transactions have nearly identical language in the operative documents.  As with the *Duval Motors Company* buyer's order, the Buyer's Order in the instant proceeding specifically contemplates a separate retail installment sales contract to be entered subsequent to the execution of the Buyer's Order.  More importantly, the finance agreement in the instant proceeding has the very same merger provision which prohibits the introduction of other extrinsic understandings or contractual language such as a separate arbitration agreement. The *Duval Motors Company* decision is even more compelling when applied to the facts before the Court here. Unlike the transaction in *Duval Motors*, the Buyer's Order signed by Mr. Ross **did**

-13-

***not*** have an arbitration provision.

The reasoning of the *Duval Motors Company* decision has been applied in state and federal courts throughout the country. See, e.g., *Hampton Automotive Group, Inc.*, 2012 WL 2034783 (N.D. Fla. 2012); *Johnson v. JF Enterprises, LLC,* _____ SW 3d _____, 2012 WL 1034234 (Mo. App. W.D. 2012) [automobile buyer could not be compelled to arbitrate claims when retail installment contract contained a merger clause and did not refinance an agreement to arbitrate]; *Dottone v. Huntington National Bank*, 2012 WL 1560431 (6th Cir. 2012); ["agreement is complete and unambiguous," therefore no consideration of parol evidence of an agreement to arbitrate].

### III. THE ARBITRATION PROVISION OF THE BUYER'S ORDER IS SUPERCEDED BY THE RISC UNDER THE DOCTRINE OF MERGER

American jurisprudence holds that to the extent of a variation between two agreements, the latter agreement prevails. See, e.g., *Joe Garavelli's Restaurant, Inc. v. Colonial Square Associates, L.P.*, 21 S.W.3d 149, 151-52 (Mo.App.E.D. 2000). Here, there is not even a contract containing an arbitration provision - merely an application for financing - which CitiFinancial does not even have a complete copy of. In addition, neither of the actual contracts, the Buyer's Order and the RISC, contain an arbitration provision. "The law conclusively presumes all prior and contemporaneous agreements have been merged into an unambiguous written contract, which becomes the final memorial of the agreement." *Union Electric Company v. Fundways, Ltd.*, 886 S.W.2d 169, 170 (Mo.App.E.D. 1994); *Federal Deposit Insurance Corporation v. Hemmerle*, 592 So.2d 1110 (Fla.4th DCA 1991)[doctrine of merger barred admission of evidence of loan extension date not set forth in written contract]. This is particularly so where the contract

contains a merger clause. Id. at 171; *Trinchitella v. D.R.F., Inc.*, 584 So.2d 35 (Fla.4th DCA 1991); *AJM Packaging Corp. v. Crossland Construction Company, Inc.*, 962 S.W.2d 906 (Mo.App.S.D. 1998).

The jurisprudence is unequivocal — a subsequent contract with a merger clause supercedes prior agreements. For example, in *AJM Packaging Corp.*, AJM sued Crossland for breach of contract. Crossland moved to compel arbitration. The parties' base contract incorporated a document that contained an arbitration clause. But the base contract also incorporated another document, the stated purpose of which was to supercede certain provisions of the other, including the arbitration clause. Holding that the latter document supplanted the former, the Missouri appellate court upheld the trial court's refusal to compel arbitration. *Cf.*, *Trinchitella*, 584 So.2d at 36 [latter contract supercedes arbitration provision in earlier agreement].

Parties who agree to arbitrate all their future disputes can later agree not to do so. As a salient example, in *Matterhorn, Inc. v. NCR Corporation*, 763 F.2d 866, 871-74 (7th Cir.1985), the Seventh Circuit affirmed the district court's decision refusing to order arbitration where the documents from the parties' latter transaction lacked any arbitration agreement, despite the presence of a broad arbitration agreement in earlier transaction documents. The court treated the issue as one of contract interpretation based on the parties' course of dealings:

> The question of arbitrability ought to turn not on what the method of suppression is called, but on whether the court can infer from the whole course of dealings between the parties that they have intended the arbitration clause in the initial contract to govern disputes arising out of the alleged attempt to supercede that contract.

> Id. at 873.

-15-

The court further reasoned that when the plaintiff "signed a contract that seemed not to incorporate any set of terms that contained an arbitration clause, it may have intended or reasonably believed that it would not be forced to arbitrate disputes arising under the contract." Id.  As the court observed, the "universal agreement" containing the arbitration clause "may have been universal, but it was not eternal." Id. at 871; *accord*, *Krueger v. Heartland Chevrolet*, ____ S.W.3d ___, 2009 WL 1044948 (Mo.App.W.D. 2009); *Smith v. Steinkamp*, 318 F.3d 775, 778 (7th Cir. 2003)[rejecting the argument that if a consumer signs one contract containing an arbitration clause and another contract without the clause, the arbitration agreement applies to both contracts]; *Rugumewa v. Betten Motor Sales*, 136 F.Supp.2d 729, 733 (W.D.Mich.2001)[final agreement did not contain arbitration clause]; *Sanford v. H.A.S., Inc.*, 136 F.Supp.2d 1215, 1222 (M.D.Ala.2001)[subsequent agreement with no arbitration clause prevails]; *Crown Pontiac v. McCarrell*, 695 So.2d 615, 618 (Ala.1997)[no arbitration agreement where second contract included merger clause and no arbitration clause]; *WFC Commodities Corporation v. Linnco Futures Group, Inc.*, 1998 WL834374 (N.D.Ill.1998)[denying motion to compel arbitration where earlier contracts requiring arbitration, the later contract sued upon did not].

There was no arbitration agreement to breach or enforce in this case. The Disputed Credit Application (which may or may not have contained the Purported Arbitration Provision) was a loan *application*, not a contract. Even assuming *arguendo* that it was a contract, it was superceded by the installment contract, which contained a clear merger clause and made no reference at all to arbitration, much less the Disputed Credit Application.

### IV.  THE FLORIDA MOTOR VEHICLE RETAIL SALES FINANCE ACT, FLA. STAT.§520.01, *ET SEQ.*, —WHICH REGULATES INSTALLMENT SALES SUCH AS THE VEHICLE PURCHASE— MANDATES THAT A RETAIL INSTALLMENT SALE CONTRACT BE COMPLETE AS TO ALL ESSENTIAL PROVISIONS, INCLUDING WHETHER THE PARTIES INTENDED TO SUBMIT DISPUTES BETWEEN THEMSELVES TO ARBITRATION.

When the parties agreed to allow for payment of the purchase price by Mr. Ross over a period of time through monthly installments, the parties entered into a "retail installment transaction" as defined under Florida Statute §520.02(13). Thus, Mr. Ross became a "retail buyer(s)" or "buyer(s)" as the term is defined under Florida Statute §520.02(10). Accordingly, the transaction is subject to all of the requirements and limitations of Florida Statute §520.01, *et sequi*, known more commonly as the "Florida Motor Vehicle Retail Sales Finance Act" ("RSFA" or "Act").

Florida Statute §520.07(1)(a) provides:

> A retail sales installment contract shall be in writing, shall be signed by both the buyer and the seller, and shall be **completed as to all essential provisions** prior to the signing of the contract by the buyer.

> Fla. Stat. §520.07(1)(a)
> [emphasis added by Plaintiff]

Under Florida and federal law, the courts must give statutes their plain and ordinary meaning in courts of law according to their terms.  Owens, 425 F.3rd at 1321["plain language of statute is presumed to express legislative intent and will control a court's interpretation"]; see, also, *Corfan Banco Asencion Paraguay v. Ocean Bank*, 715 So.2d 967 (Fla. 3rd DCA 1998). The legislature must be presumed to mean what it has plainly expressed and if an error in interpretation is made, it is up the legislature to rewrite the statute to accurately reflect legislative

-17-

intent. Id.; *Doe v. Mortham*, 708 So.2d 929 (Fla. 1998); *Burger King Corporation/Cigna Insurance Company v. Marino*, 698 So.2d 288 (Fla. 1st DCA 1997).

To be sure, the agreement to arbitrate disputes is an "essential provision" in a written contract between the respective parties. The Florida legislature mandated that every "essential provision" be included in any contract subject to the Act.  The failure to comply with the legislative mandate of the Act exposes businesses such as the Dealership to severe criminal and civil penalties. See, Florida Statute §520.12. Thus, the failure to include an arbitration provision in the retail installment sales contract renders the requirement to arbitrate a nullity under the Act if the provision is not contained in the four corners of the retail installment sales contract. *Cf. Gonzalez v. Consumer Portfolio Services, Inc.,* 2004 WL 2334765 (Va.Cir.Ct. 2004); see, also, *Baker v. Antwerpen Motor Cars, Ltd.*, 807 F.Supp. 2nd 386 (D. Md. 2011); *Tokarski v. Castle Auto Outlet, LLC*, 2009 WL 8711121 (D. Md. 2009).

In *Antwerpen Motor Cars,* in a case with facts similar to *Duval Motors, supra,*  the United States District Court of the District of Maryland considered claims brought by car buyers against an automobile dealer and others asserting various state and federal claims based on the defendant's alleged failure to disclose that the cars sold to them had been used as short term rentals.  Id. at 387.  In response to the lawsuit, the defendants claimed that an arbitration agreement contained in a buyer's order required that the parties submit their dispute to arbitration for resolution.  Id.  In response, the plaintiffs argued *inter alia* that the retail installment sale contract - which did not contain an arbitration clause - was the only operative agreement between the parties. Id. at 389.

The Maryland District Court recognized that Maryland law with respect to vehicle sale

agreements provided: "an installment sale agreement shall be evidenced by an instrument in writing contains all the agreements of the parties."  Accordingly, the Court held that the RISCs "are the only agreements that apply to the transaction, and the arbitration clause [and the buyer's orders] is not one of them."  Accordingly, the District Court denied the motion to compel arbitration. Id.

The clear language of the RSFA requires that the contract to purchase and finance a vehicle in the State of Florida be complete as to all material provisions.  An agreement to arbitrate is a material provision.  Accordingly, in light of a clear legislature directive under the RSFA, an agreement to arbitrate which is outside the purchase and finance agreement is unenforceable.

## CONCLUSION

In this lawsuit, CitiFinancial attempts to pick and choose the contract language that it believes will best help it defend the lawsuit.  On the one hand, CitiFinancial wants to push Mr. Ross into arbitration using the language of the Disputed Credit Application — even though it does not even have a complete copy of the document with the operative language.  On the other hand, CitiFinancial asks the Court to disregard the clear language of the RISC.  The argument of CitiFinancial's argument contradicts the relevant jurisprudence on several levels.  This position is especially curious as the Dealership authored the RISC —  a paradigm of a contract of adhesion —   in the first place.

According, in light of the arguments set forth above, Plaintiff, Samuel Ross, respectfully requests that this Court deny the Motion to Compel Arbitration and Dismiss Plaintiff's Claims and for such other and further relief as justice may require.

-19-

LAW OFFICES ROBERT W. MURPHY

/s/ Robert W. Murphy
Robert W. Murphy
Florida Bar No. 717223
1212 SE 2nd Avenue
Fort Lauderdale, FL 33316
(954) 763-8660 Telephone
(954) 763-8607 Telecopier
Email: rphyu@aol.com

John Roddy
*Pending admission pro hac vice*
BAILEY & GLASSER, LLP
125 Summer Street, Suite 1030
Boston, MA 02110
(617) 439-6730 Telephone
(617) 951-3954 Telecopier
Email: jroddy@baileyglasser.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 10, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on R. Frank Springfield, Esquire, Burr & Forman LLP, 200 S. Orange Avenue, Suite 800, Orlando, FL 32801; and John R Chiles, Esquire, Burr & Forman LLP, 350 E. Las Olas Blvd., Suite 850, Fort Lauderdale, FL 33301, in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

/s/ Robert W. Murphy
Attorney

-20-