## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

### CASE NO.: 3:12-cv-1173-TJC-TEM

SAMUEL ROSS, individually, and on
behalf of all others similarly situated,

      Plaintiff,

v.                                   **CLASS ACTION**

CITIFINANCIAL AUTO, LTD.,

      Defendant.

_____/

### MEMORANDUM IN SUPPORT OF
### UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

      Plaintiff, Samuel Ross, an individual ("Mr. Ross"), on behalf of himself and all others

similarly situated, pursuant to Rules 3.01 and 4.04, Local Rules of the United States District

Court for the Middle District of Florida, and Rule 23, Fed.R.Civ.P., files this Memorandum of

Law in Support of Unopposed Motion for Preliminary Approval of Class Settlement ("Motion

for Preliminary Approval"):

### I.  INTRODUCTION

### *A.  SYNOPSIS OF COMPLAINT ALLEGATIONS*

      The instant action was brought by Mr. Ross against CitiFinancial Auto, Ltd.

("CitiFinancial") for violation of Article 9, Part VI of the Uniform Commercial Code ("UCC"),

with respect to the repossession sale of automobiles. According to the allegations of the

Complaint, on or about May 12, 2006,  Mr. Ross entered into a retail installment sale contract

("RISC") to finance the purchase of a new 2006 Chrysler automobile ("Vehicle") for his personal and household use (Complaint - ¶9). On or about July 20, 2011, The RISC was subsequently assigned to CitiFinancial  (Complaint - ¶10).  Shortly thereafter, CitiFinancial caused Santander Consumer USA, Inc. ("Santander") to send to Mr. Ross a notice advising him of the repossession and of its intent to dispose of the Vehicle in purported compliance with Article 9 of the UCC ("Post-Repossession Notice") (Complaint - ¶14). A copy of the Post-Repossession Notice is attached to the Complaint as Exhibit "A" (Complaint - ¶14).

It is the position of Mr. Ross that the Post-Repossession Notice did not comply with the UCC as a result of its failure to identify the secured party for the RISC, to-wit: CitiFinancial. Rather, the Post-Repossession Notice identified the then-servicer for the RISC — Santander Consumer USA, Inc. ("Santander") — as the secured creditor.

Before a creditor may sell a repossessed vehicle, the UCC requires that it send the borrower "a reasonable authenticated notification of disposition." UCC, Fla.Stat.§ 679.611. Among other obligations, Fla. Stat.§§ 679.613 and 679.614 specify the information that must be included in a Post-Repossession Notice for it to comply with the law. Section 679.613(1) provides, in pertinent part, that the Post-Repossession Notice must describe both the debtor and the secured party.

As a result of the business practices of CitiFinancial with respect to post-repossession notices of consumers, Mr. Ross filed the instant action on behalf of himself and all others similarly situated seeking statutory damages and other relief against CitiFinancial under the civil remedies provision of the UCC, §9-625.

In response to the Complaint, CitiFinancial filed *inter alia* a Motion to Compel

Arbitration [DE 10] which the Court has taken under advisement after briefing and oral argument. CitiFinancial has denied liability and has expressed a willingness to advance both substantive and procedural defenses, including, but not limited to, that the Post-Repossession Notice complies with the relevant sections of the UCC. Further, it is anticipated that CitiFinancial would claim that it or its assignee(s) is entitled to a setoff and, in certain instances, a judgment against Class Members for deficiencies. The Court has not made a decision concerning the merits of these claims.

In support of the Motion for Preliminary Approval, Mr. Ross has filed the following:

- Declaration of Wayne Nightengale, Senior Vice President of Santander ("Nightengale Declaration");

- Declaration of Robert W. Murphy, Esquire ("Murphy Declaration");

- Declaration of John Roddy ("Roddy Declaration"); and

- Declaration of Samuel Ross ("Ross Declaration").

## B.  OVERVIEW OF SETTLEMENT

### 1.  Description of Negotiation Process

As detailed in the Murphy Declaration, counsel for Mr. Ross has conducted a significant and time-consuming investigation of the factual and legal matters in the action (Murphy Declaration - ¶3). After motion practice, the parties were engaged in settlement negotiations that lasted several months. In conjunction with these negotiations, the parties exchanged information and documents relevant to the discussions to allow counsel to acquire sufficient knowledge and information to adequately assess the merits of the settlement. On February 7, 2014, the parties attended an all-day mediation with a skilled mediator, Terrence M. White, Esquire. With the

assistance of Mr. White, the parties reached the terms of settlement which were memorialized in what is commonly referred to in class litigation practice as a "terms sheet." After reaching a settlement in principle over several weeks, the parties negotiated the detailed final terms of the Settlement Agreement presently before the Court (Murphy Declaration - ¶¶ 4-6).

## 2. Terms of Settlement

The terms of the Settlement Agreement presented to the Court for preliminary approval are:

Settlement Class: The parties seek approval of the Settlement Class consisting of all persons who, from September 12, 2008 to February 14, 2014: (a) have or had a RISC held by CitiFinancial secured by a motor vehicle purchase in Florida; (b) had their RISC serviced by Santander; (c) had their motor vehicle repossessed in Florida by CitiFinancial, Santander or its agents; (d) were sent a post-repossession notice from Santander while it was servicing a RISC owned by CitiFinancial which failed to describe CitiFinancial as the secured party; (e) still have their loan owned or serviced by CitiFinancial or Santander; (f) against whom CitiFinancial or Santander has not obtained a deficiency judgment; (g) have not obtained discharge in bankruptcy applicable to any such RISC; (h) have not filed for bankruptcy following the repossession of the motor vehicle securing the RISC; (i) were not on active duty in the U.S. Military to trigger the protections of the Solders' and Sailors' Civil Relief Act at the time the repossession of the motor vehicle securing the RISC tool place or at the time the post-repossession notice was sent; and (j) have not had their RISC reinstated after the repossession of the motor vehicle securing the RISC took place [Settlement Agreement - ¶ 2.1].

Waiver of Deficiency: CitiFinancial shall waive deficiencies arising from the RISCs of

the respective class members for the financing of motor vehicles [Settlement Agreement - ¶ 8.5]. The aggregate balance of the deficiencies ("Waived Deficiencies") of the Class Members is Twelve Million Two Hundred Nine Thousand Four Hundred Thirteen and 96/100ths Dollars ($12,209,413.96) (without accrued interest) (Nightengale Declaration - ¶8).

Notification to Credit Reporting Agencies: CitiFinancial shall request that the credit reporting agencies ("CRAs") delete the tradelines related to the finance agreements at issue in this matter from the credit reports of the Settlement Class Members. [Settlement Agreement - ¶ 8.1].

Attorney's Fees, Costs and Expenses: Class Counsel shall submit a request for reasonable attorney's fees in the amount of Two Hundred Seventeen Thousand Five Hundred Dollars ($217,500.00) and for an incentive award to the Class Representative in the amount of Five Thousand ($5,000.00) Dollars.  CitiFinancial has agreed not to oppose or object to said application [Settlement Agreement - ¶¶ 9-10].

Cost of Settlement Administration: The cost of settlement administration, including but not limited to the cost of printing and mailing the notices to Class Members shall be paid by CitiFinancial through Santander, subject to approval of the Court [Settlement Agreement - ¶ 15].

## II.  STANDARD OF REVIEW OF CLASS ACTION SETTLEMENTS

Courts consistently favor settlement of disputed claims. *See Williams v. First National Bank*, 216 U.S. 582 (1910); *Weinberg v. Kendrick*, 698 F.2d 61, 73 (2d Cir.1982); *DuPuy v. Director, Officer of Worker's Compensation Programs*, 519 F.2d 536,541 (7th Cir.1975), *cert. denied*, 424 U.S.965 (1976).  Nowhere is this policy more appropriate than in class actions:

In the class action context in particular, "there is an overriding public interest in

favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.1977). Settlement of the complex disputes often involved in class actions minimizes the litigation expense of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources. *Id.*

See Armstrong v. Board of School Directors, 616 F.2d 305, 313 (7th Cir.1980); *see also, Franks v. Kroger,* 649 F.2d 1216, 1224 (6th Cir.1981) *vacated on other grounds and modified*, 670 F.2d 71 (6th Cir.1982) (law generally favors and encourages the settlement of class actions).

"[T]here is a strong initial presumption that the compromise is fair and reasonable." *In re Saxon Securities Litigation, supra,* ¶92,414 (quoting *Katz v. E.L.I. Computer Systems, Inc.*, [1970-71 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶92,994 at 90,676 (S.D.N.Y. 1971)). Accordingly, courts exercise restraint in examining a proposed settlement and recognize that "[s]ettlements, by definition, are compromises which need not satisfy every single concern of the plaintiff class, but may fall anywhere within a broad range of upper and lower limits."  *In re Saxon Securities Litigation, supra,* ¶92,414 at 92,525 (quoting *Alliance to End Repression v. City of Chicago,* 561 F.Supp. 537, 548 (N.D.Ill.1982)).

## III.  LEGAL ARGUMENT

### A.  THE PROPOSED SETTLEMENT CLASS MEETS THE REQUIREMENTS OF CERTIFICATION UNDER RULE 23, FEDERAL RULES OF CIVIL PROCEDURE.

#### 1.  Review of Prerequisites for Class Certification

##### a.  The Class Definition is Appropriate

Under Rule 23, Fed.R.Civ.P., a class should be certified when the plaintiff meets all four requirements of Rule 23(a) and one of the requirements of Rule 23(b). *Amchem  Products, Inc. v. Windsor,* 521 U.S. 591, 117 F.Ct. 2231, 2245-2248, 138 L.Ed. 2d 689 (1997)["in settlement only class certifications, a district court need not inquire whether the case, if tried, would present

-6-

intractable management problems"]. Rule 23(a) provides:

> One or more members of the class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impractical; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class.

In the instant case, the proffered class is alleged to consist of: all persons who, from September 12, 2008 to February 14, 2014: (a) have or had a RISC held by CitiFinancial secured by a motor vehicle purchased in Florida; (b) had their RISC serviced by Santander; (c) had their motor vehicle repossessed in Florida by CitiFinancial, Santander or its agents; (d) were sent a post-repossession notice from Santander while it was servicing a RISC owned by CitiFinancial which failed to describe CitiFinancial as the secured party; (e) still have their loan owned or serviced by CitiFinancial or Santander; (f) against whom CitiFinancial or Santander has not obtained a deficiency judgment; (g) have not obtained discharge in bankruptcy applicable to any such RISC; (h) have not filed for bankruptcy following the repossession of the motor vehicle securing the RISC; (i) were not on active duty in the U.S. Military to trigger the protections of the Solders' and Sailors' Civil Relief Act at the time the repossession of the motor vehicle securing the RISC tool place or at the time the post-repossession notice was sent; and (j) have not had their RISC reinstated after the repossession of the motor vehicle securing the RISC took place [Settlement Agreement - ¶ 2.1].

The above described group of persons can easily be identified. The books and records of the Defendant will provide the identity of all persons who received the defined communication. Thus, Plaintiff has adequately described the class.

**b. Numerosity is established to the extent that joinder is impractical.**

Courts have noted that the requirement of numerosity is more adequately described as the "impracticality of joinder" requirement. *See*, generally, *Miles v. America Online, Inc.*, 202 F.R.D 297 (M.D. Fla. 2001); *Walco Investments v. Thesen*,168 F.R.D.315,324 (S.D. Fla.1998). That is to say that joinder of all class members must be impractical does not mean that joinder must be impossible. Instead, it only means that the Court must find that the difficulty or in convenience of joinder of all members makes class litigation desireable. *Singer*, 185 F.R.D. at 687. In making this finding, the Court may consider relevant facts other than the numbers of class members. *See, America On Line*, 202 F.R.D. at 302 [stating "there is no yardstick that measures the minimum class members necessary to satisfy the requirements of numerosity."]; *see, CV Reit, Inc. v. Levy*, 144 F.R.D. 690 , 696 (S.D. Fla. 1992)[stating that "there is no definite standard as to how many members a class must have."] The Court should consider " the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Walco*, 168 F.R.D. at 324; *America On Line*, 202 F.R.D. at 302.

The proposed class in the instant action easily satisfies the numerosity requirement as the estimated class size involves one thousand one hundred seven (1,107) accounts (Nightengale Declaration - ¶5). As such, the proposed Settlement Class is inescapably so numerous to make individual joinder of class members extremely impractical. *See, e.g., America On Line*, 202 F.R.D. at 303 [proposed class of 4,700 subscribers satisfied the requirement]; *CV Reit*, 144 F.R.D. 690 [500 class members sufficient]; *Powers v.Stewart-James Company, Inc.*, 707 F.Supp. 499, 501-502 (M.D. Fla. 1989)[500 investor class members satisfied numerosity requirement.]

**c.   The Class Representative Asserted Questions of Law and Fact Common to the Class.**

*i.     Review of commonality element.*

Under Rule 23(a)(2), the Court must find the existence of questions of law and fact that are common to all class members before the matter may be certified as a class action. No qualitative or quantitative task will determine commonality; it is only necessary to find at least one issue common to all class members. *Pottinger v. City of Miami,* 720 F.Supp 955, 958 (S.D. Fla. 1989); *Walco,* 168 F.R.D. at 325; *Singer*, 185 F.R.D. at 687.

Not all factual legal questions raised in the litigation need to be common so long as at least one issue is common to all class members. *Armistead*, 629 F.Supp. at 280; *Pottinger*, 720 F.Supp 955, 958 (S.D. Fla. 1989). "A sufficient nexus is established if the claims or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory." *Kornburg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984), cert denied, 471 U.S. 1004 (1985). "The fact that there is some factual variation among the class grievances will not defeat a class action … a common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23 (a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992), *cert denied* , 506 U.S. 1051, 113 S.Ct.972 (1993); *See, also, Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1990).

*ii.    "Commonality" in UCC Class Actions.*

(1)   Systematic Conduct of Defendant.

In the instant action, each prospective class member was sent a letter in the form substantially similar to the Post-Repossession Notice set forth as Exhibit "A" to the Complaint. "To establish commonality, it is sufficient that plaintiff allege that all class members received the

same collection letter." *Swanson v. MidAm, Inc.*, 186 F.R.D. 665, 668 (M.D. Fla. 1999).["The very definition of this class logically involves common questions, such as whether the subject collection letter violates 15 U.S.C. §1692g"]. *Macarz v. Transworld Systems, Inc.*, 193 F.R.D. 46, 49 (D. Conn.2000).

The repossession activities of CitiFinancial — like most large lenders — are systemized. Given the confluence of form documents and uniform statutory damages, cases involving defective repossession notices, like this one, are routinely certified as class actions. *See, e.g., Jenkins v. Hyundai Motor Financing Co.*, 2008 WL 781862 (S.D. Ohio March 24, 2008); *Walczak v. Onyx Acceptance Corp.*, 850 N.E.2d 357, 366-372 (Ill.App.2d Dist.2006); *Middleton v. Sunstar Acceptance Corp.*, 2000 WL 33385388, *3-*8 (S.C.Com.Pl.Jan. 13, 2000); *Chisolm v. TranSouth Financial Corp.*, 194 F.R.D. 538, 557-569 (E.D.Va. 2000); *Car Now Acceptance Co. v. Block*, 2002 WL 32001272 (Ohio. Com. Pl. Nov.25, 2002)*, affirmed, North Shore Auto Financing, Inc. v. Block*, 2003 WL 21714583 (8th Dist. July 24, 2003), appeal not allowed, 800 N.E.2d 47 (Ohio 2003); *Moye v. CAC*, 2001 WL1098259 (Conn.Super. 2001); *Mortera v. Ford Motor Credit*, 2003 Calif. Super LEXIS 4433117 (June 23, 2003). To be sure, cases involving the use of form documents are particularly appropriate for class treatment. *Orloff v. Syndicated Office Systems, Inc.*, 2004 WL 870691 at *3-4 (E.D. Pa. Apr.22, 2004).

(2)   No Requirement of Reliance by Class Members

Whether Mr. Ross or any other class member were mislead by the improper Post-Repossession Notice is not an element of the cause of action brought herein under the UCC. Indeed, when a creditor violates Article 9, Part 6, if the collateral is a consumer good, the consumer is entitled to the greater of the consumer's actual damages or the statutory damages set

-10-

forth in UCC Section 9-625(c)(2).  *See, Atlantic Coast Federal Credit Union v. Delk*, 526 S.E. 2d

425 (Georgia 1999)[even if debtor cannot prove monetary loss, consumer debtor is entitled to

recover statutory damages]. As stated in the Comments to the civil remedies provision of Article

9:

> **4.  Minimum Damages in Consumer-Goods Transactions.**   Subsection (c)(2)
> provides a minimum, statutory, damage recovery for a debtor and secondary
> obligor in a consumer-goods transaction. It is patterned on former Section 9-
> 507(1) and is designed to ensure that **every noncompliance** with the requirements
> of Part 6 in a consumer-goods transaction results in liability, **regardless of any
> injury that may have resulted**.

*Comment 4*, Section 9-1-625 (emphasis added)

### d.  The Claims of Mr. Ross are Typical of the Claims of Class Members.

Linked closely with Rule 23(a)(3) requirement of commonality is its prerequisite that a

class action can be maintained only if  "the claims or defenses of the representative parties are

typical of the claims or defenses of the class." The Eleventh Circuit has explained that typicality

requires the existence of:

> A nexus between the class representatives claims and defenses and the common
> questions of law or fact that unite the class. A sufficient nexus is established if the
> claims or defenses of the class and the class representative arise from the same
> event, pattern and practice and are based on the same legal theory. Typicality,
> however, does not require identical claims or defenses. A factual variation will not
> render a class representative's claims atypical unless the factual position of the
> representative markedly differs from that of other members of the class.

*Kornburg,* 741 F.2d at 1337, 471 U.S. 1004 (1985).

The primary concern is that the claims of the named representative have the same

essential characteristics of the claims of the class at large. *See, V. Reit*, 144 F.R.D. at 697;

*Pottinger*, 720 F.Supp at 959. "Typicality" is satisfied when a named party's claim is derived

from the same course of conduct from which the claims of the class members evolved and are

"based on the same legal or remedial theory." *See, Singer*, 185 F.R.D. at 689; *CV Reit*, 144

F.R.D. at 697. Even if each class member is not effected in exactly the same way by defendant's

conduct, such factual distinction between the claims of the class representative and the class

members will not defeat a finding of typicality. *Singer*, 185 F.R.D. at 689; *CV Reit*, 144 F.R.D. at

697; *Amerifirst*, 139 F.R.D. at 428. Differences in each class member's claim for damages do not

preclude class certification. *See, e.g., Broin v. Phillip Morris Companies, Inc.*, 641 So.2d 888

(Fla. 3d DCA 1974).

In the instant case, the claims of the proposed class representative are not factually

distinguishable from the claims of the class members. Each member's claim arises from the same

course of conduct engaged in by the Defendant — that is the transmission of a post-repossession

notice which does not comply with the UCC. Therefore, the requirement of Rule 23(a)(3) is

satisfied.

### e. Plaintiff and His Counsel Will Adequately Represent the Interests of the Class

Rule 23(a)(4) requires that the representatives will fairly and adequately represent the

class interest:

> Adequate representation involve "questions of whether plaintiff's counsel are qualified,
> experienced, and generally able to conduct the proposed litigation … the adequacy
> requirement serves to uncover conflicts of interest between the named parties and the
> class they seek to represent. A class representative must be part of the class that possesses
> the same interest and suffered the same injury as the class representative.

*America On Line*, 202 F.R.D. at 303; *see, also, Pottinger v. City of Miami*, 720 F.Supp. 955, 959
(S.D. Fla. 1989).

Thus, the three factors important for determination of "adequacy" are:

(1)   Whether the plaintiff has interests that are antagonistic to the class;

(2)   Whether plaintiff has sufficient interest in the outcome to ensure vigorous advocacy; and

(3)   Whether plaintiff's counsel's qualifications, experience and ability to conduct the litigation vigorously.

Adequacy of representation is presumed unless there is evidence to the contrary.

*Gammon v. G.C. Services Limited Partnership*, 162 F.R.D. 313, 317-319 (M.D. Ill.1995); *Access Now, Inc*., 2001 F.L. 1809979 at 64.

Federal courts interpret the "commonality test" of Rule23 (a)(2) as a requirement that there be no conflict of interest as between the representatives and the class as a whole. *Carter v. West Publishing Company*, 199 WL 994997 (11th Cir. 1999). In addition, only conflicts that go to the heart of the matter being litigated will serve as a basis for denying certification. *Id*.at 1280. Disagreements regarding the conduct of the litigation do not preclude representation. *Warren v. City of Tampa,* 693 F.Supp.1051 (M.D. Fla. 1988).

With respect to the issue of adequacy, Mr. Ross has filed contemporaneous herewith the Ross Declaration, as well as the Murphy and Roddy Declarations.  In the instant case, the interests of the Plaintiff are identical to those of the class members. Mr. Ross seeks damages as a result of the unlawful practices of the Defendant. Given the identical claims of the class members and the commitment of the Plaintiff to the prosecution of this action, Plaintiff is an adequate representative of the class.

In the absence of antagonism between the interests of the named representatives and those of the class, "adequate representation" requires the named representatives have the ability to prosecute the action vigorously through qualified counsel. *Butterworth v. Quick & Riley, Inc.*,

171 F.R.D. 319 (M.D. Fla. 1997); *Kirkpatrick*, 827 F.2d 718 (11th Cir.1987). The class representative must have adequate participation and understanding of the facts and issues involved in the case, not just "blind reliance upon even competent counsel by uninterested inexperienced representatives." *Id*. at 726; *see, also, Butterworth*, 171 F.R.D. at 322.

Mr. Ross has been fully involved with the litigation, which led to the proposed settlement (Ross Declaration—¶¶ 3-8).  Among other things, Mr. Ross attended the hearing on the Motion to Compel Arbitration on August 19, 2013 as well as a full day of mediation on February 7, 2014.  Furthermore, the class representative is represented by counsel with significant experience in the prosecution of litigation in consumer protection class actions, and there is no doubt that the "vigorous  prosecution" element is satisfied (Murphy Declaration—¶ 18) (Roddy Declaration—¶ 11).

### 2.   The Instant Action May be Certified Under Rule 23(b)(3),  Fed. R. Civ.P., as Common Questions of Law and Fact Predominate the Proceeding.

#### a.   Common Questions of Law and Fact Predominate

In addition to meeting the prerequisites of Rule 23(a), an action must satisfy at least one of the three conditions of subdivision (b) of Rule 23. In the instant proceeding, Mr. Ross seeks, *inter alia*, certification under Rule 23(b)(3) which provides in pertinent part:

> (b) An action may be maintained as a class action if the prerequisites of (a) are satisfied, and in addition:

> \*                     \*                     \*

> (3) finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members …

> In deciding whether common questions predominate, courts focus on the issue of liability.

*Dura-Built Corporation v. Chase Manhattan Corporation*, 89 F.R.D. 87, 93 (S.D. N.Y. 1981).

Not all questions of law or fact need to be in common. *Walco*, 168 F.R.D. at 334. The existence

of a few individual questions will not negate the predominance of common issues. Rule 23(b)(3)

only requires that the common issues predominate over the individual issues. *Id.*

Cases dealing with the legality of standardized legal documents or conduct are generally

appropriate for certification and resolution as a class because a document is the crux of the case

that results in the predomination of common questions of law or fact. *Amchem Products,Inc. v.*

*Windsor*, 521 U.S. 591, 117 S.Ct. 2231 (1997) ["Predominance is a test readily met in certain

cases alleging consumer … fraud."]; *Maalox*, 204 F.R.D. at 42. In the instant case, common

questions predominate because the main issue before the Court is whether the Defendant's UCC

notices, in the form represented by Exhibit "A" to the Complaint violate the UCC.

**b.   A Class Action is Superior to Other Available Methods to Resolve this Controversy**

The primary focus to determine whether a class action is a superior method of resolving

the controversy presented involves consideration whether the procedure allows for the efficient

and economic litigation of a question potentially affecting every class member.  *Kelly v.*

*Sabretech, Inc.*, 195 F.R.D. 48, 51 (S.D. Fla. 1999)["The class action procedure allows for the

efficient economical litigation of a question potentially affecting every class member."];

*D'Alauro v. GC Services Ltd. Partnership*, 168 F.R.D. at 451 (E.D.N.Y.1996)["Class actions are

a superior method for resolving controversies when the main objectives of Rule 23 are served;

namely, the efficient resolution of the claims or liabilities of many individuals in a single

action."]

As stated most recently by Judge Posner in *Eubank v. Pella Corp.*, _____ F.3d _____,

2014 WL2444388 (7th Cir. June 2, 2014):

> The class action is an ingenious procedural innovation that enables persons who have suffered a wrongful injury, but are too numerous for joinder of their claims alleging the same wrong committed by the same defendant or defendants to be feasible, to obtain relief as a group, a class as it is called.  The device is especially important when each claim is too small to justify the expense of a separate suit, so that without a class action there would be no relief, however meritorious the claims.

Id.*1.

The first factor pertinent to the Court's determination of whether a class action is the superior method of adjudicating the matter is "the interest of members of the class individually controlling the prosecution or defense of separate actions." Rule 23(b)(3), Fed.R.Civ.P. The economic reality of the cases such as this— where the individual damage amounts at stake are small compared to the cost of litigation— precludes individuals from having any discernable interest in controlling the prosecution of separate actions. *Fischler v. AmSouth Bancorporation*, 971 F.Supp. 533 (M.D. Fla. 1997) [Individuals only have an interest in prosecuting individual actions that are large enough to justify expending attorneys fees and litigation costs.]; *Garner*, 184 F.R.D. at 605. The alternative to a class action is untenable because there is no recourse for the thousands of persons for whom the economic realities of pursuing an individual action against Defendant would, for all intents and purposes, foreclose the possibility of seeking relief.

> Where class members present no strong interest in individually controlling the prosecution or defense of a separate action or the class members are "in a poor position to take legal redress either because they do not know enough or because such redress is disproportionately expensive, a class action is particularly appropriate.

*In re Amerifirst Securities Litigation*, 139 F.R.D. 423, 435 (S.D.Fla.1991).

As to other superior factors, the "desirability of concentrating the litigation" in this forum also weighs in favor of class certification, which plainly will "achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated." *Fifth Moorings Condominium, Inc. v. Shere*, 81 F.R.D. 712, 719 (S.D. Fla. 1979). A class action offers the only practical method of obtaining a fair and efficient disposition of these claims. The alternative to this class action would be a duplication of many actions. The needless and wasteful multiplication of actions is precisely the evil that the class action procedure was designed to avoid. *Califano v. Yamasaki*, 442 U.S. 682, 690 (1979).

In its analysis concerning superiority, a court must first consider that "individual consumers are most likely unaware of their rights" under the UCC. *See e.g., Ballard v. Equifax Check System, Inc.,* 186 F.R.D. 599, 600 (E.D. Ca. 1999). Class actions are often the most suitable method for resolving suits to enforce compliance with consumer protection laws because the awards in an individual case are usually too small to encourage a lone consumer to file suit. Id.

The special efficiency of class actions has been noted by the courts and is applicable to this case:

> A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small or medium size claimants may be involved. In light of the awesome costs of discovery and trial, many of them will not be able to secure relief if class certification were denied.

*In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727,732 (M.D. Ill.1977); *See also, Ballard*, 186 F.R.D. at 600 ["Efficiency and consistency of concerns favor litigating the legality of …standardized conduct by all class members in one suit rather than forcing each class member to

sue individually"].

Finally, the class action mechanism is superior because no significant management problems are anticipated. Plaintiff's claims present a straightforward question concerning the legality of the printed form documents and Defendant's standardized practices. Defendant's records will provide the names and addresses of potential class members and liability issues will be identical for each class member.

### B. THE COURT SHOULD PROVIDE PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT AS BEING FAIR, ADEQUATE AND REASONABLE.

#### 1. The Proposed Settlement is Fair, Adequate and Reasonable

Judicial approval of class action settlements requires a two-step process.  In the first step, the court makes a preliminary determination as to whether the settlement falls "within the range of possible judicial approval." *H. Newberg, Newberg on Class Actions* (3d Ed. 1993) §11.25, p.11-37.  Once the settlement is found to be within the range of possible approval, a final approval hearing is scheduled and notice is provided to the class. *Id*.  The second step involves final determination, following a hearing at which pertinent evidence and any objections by class members may be considered, that the settlement is fair, reasonable and adequate from the standpoint of the class. *Id*. at §11.41.

*In Warren v. City of Tampa*, 693 F. Supp. 1051 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347 (11th Cir. 1989), the District Court described review of class action settlements as follows:

> The Court initially recognizes the principal that settlements are highly favored in the law.  Miller v. Republic National Life Insurance Company, 559 F.2d 426 (5th Cir. 1977).  The Court is required to make a two-part determination that: 1) there is no fraud or collusion in reaching settlement, and 2) the settlement is fair,

adequate and reasonable.  Bennett v. Behring Corp., 737 F.2d 982
(11th Cir. 1984).

*Id.* at 1054

The evaluation of whether a settlement is fair, reasonable and adequate is committed to the sound discretion of the trial court.  *Bennett*, 737 F. 2d at 987.  In making this determination, the trial court is entitled to rely upon the judgment of experienced counsel for the parties.  *Behrens v. Wometco*, 118 F.R.D. 534, 538 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

In lieu of a more extended inquiry into the claims asserted, courts have concentrated on the negotiating process by which the settlement was reached.  *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982), *corrected on other grounds on pet. for reh'g*, [1982-1983 Transfer Binder] Fed. Sec. L. Rep. (CCH) 99,074 (2d Cir.) *cert. denied* 464 U.S. 818 (1983).  The courts insist that a settlement be the result of "arm's length negotiations" effected by counsel possessed of "experience and ability . . . necessary to effective representation of the class' interests."  *Id.* 698 F.2d at 74 (citation omitted).  Once counsel's experience is established, courts give such counsel's "opinion . . . supporting the settlement . . . 'considerable weight' ".  *In re: Saxon Securities Litigation, supra*, [1985-1986 Transfer Binder] Fed. Sec. L. Rep. (CCH) 92,414, at 92,525 (S.D.N.Y. 1985).  This is because "the parties' counsel are best able to weigh the relative strengths and weaknesses of their arguments."  *Id.*

In determining whether a proposed settlement is fair, adequate and reasonable, this Court should consider the following seven factors:

(1)     the likelihood of success or recovery;

(2)     the range of possible recovery;

(3)     the settlement terms and conditions, and how the terms compare with the
possible range of discovery;

(4)     the complexity expense and duration of future litigation;

(5)     the substance and amount of any opposition to the settlement;

(6)     the stage of the proceedings at which settlement is reached;

(7)     the recommendations and judgment of experienced counsel and the
absence of collusion.

*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). Application of these factors shows
that the proposed settlement is fair, adequate, reasonable and in the best interest of the Settlement
Class.

2.      *Even With a Strong Factual and Legal Case, Class Members Face a
Significant Risk in Establishing Liability and Damages.*

Although Plaintiff believes that the claims he has raised are meritorious, he nonetheless
recognizes that ultimate success on the merits is by no means assured. Indeed, when settlement
negotiations were commenced, CitiFinancial through its counsel had made it clear that if this
matter were contested, it would vigorously challenge the merits of the claim of Mr. Ross.
CitiFinancial also contended and continues to contend that it has meritorious defenses to the
asserted claims.

3.      *The Settlement Terms and Conditions Offer Substantial Benefit to
All Settlement Class Members.*

Benefit to the Settlement Class is the fundamental test of the reasonableness of a
settlement. Here, the proposed settlement provides remedies directly responsive to the primary
relief sought by Plaintiff: the abandonment of any outstanding claimed deficiency balances

[Settlement Agreement - ¶ 8.5]. As noted, such deficiency balances amount to approximately $12,209,413.96 for the class period  [Settlement Agreement - ¶ 7]. In addition, the settlement provides that the credit histories of class members will be corrected to delete any adverse information [Settlement Agreement - ¶ 8.1].

The Settlement Agreement further provides that, for the purposes of attorneys' fees, costs and expenses, Mr. Ross through counsel will move for attorneys' fees and costs of $217,500 — less than two percent (2%) of the total economic benefits to the proposed class [Settlement Agreement - ¶¶ 8-9].

Thus, the Settlement Agreement provides Class Members meaningful relief, and in addition, provides Class Members clear notice so that they could make an informed decision about whether to participate. It is also noteworthy that Class Members will be entitled to receive all of the relief provided in the Settlement Agreement without having to submit a claim form.

Of course, the essence of a settlement is compromise. A settlement compromising conflicting positions in class action litigation serves the public interest. *See, Armstong, supra*, 616 F.2d 313. In evaluating a settlement, the trial court should not decide the merits, or proceed from the assumption that victory is assured and that all claimed damages are properly recoverable. *See, In re Domestic Air Transportation Antitrust Litigation, supra,* 148 F.R.D. at 312-13; *Armstrong, supra*, 616 F.2d at 314-15. A settlement need not obtain one hundred percent of the potential recovery of damages if it represents a knowing and intelligent compromise. *See, Bennett, supra,* 737 F.2d at 987 (settlement providing for $675,000 of maximum possible $12 million recovery adequate). The Settlement here affords a large measure of the relief available to the class should the case be tried, and as such, is demonstrably just and reasonable.

-21-

### 4. The Time and Expense of Protracted Litigation Make Settlement Appropriate.

Settlement promotes the interests of the litigants by saving them the expense of trial of disputed issues and reduces the strain on already overburdened courts. *See, Armstrong, supra,* 616 F.2d at 313; *Newman v. Stein,* 464 F. 2d 689, 691-92 (2d Cir.)*, cert. denied, sub nom.; Benson v. Newman,* 409 U.S. 1039 (1972*); Enterprise Energy, supra,* 137 F.R.D. at 247-48 (class action settlement serves interests of both litigants and public by avoiding a time-consuming trial and appeal).  This position is especially compelling in light of the class size.

### 5.  Plaintiff's Counsel Has Conducted Due Diligence Discovery and Has Negotiated the Settlement from a Well-Informed Perspective.

Since the instant action was initiated, the parties have developed a substantial appreciation for the merits of their respective positions before reaching an agreement as to settlement.  As part of the due diligence efforts of Plaintiff's counsel, Plaintiff received documentation from CitiFinancial relevant to the repossession notices used by CitiFinancial and deficiency balances claimed by CitiFinancial.

The parties entered into earnest settlement negotiations starting in August, 2013. The negotiations consisted of lengthy office and telephonic conferences over several months. In conjunction with the negotiations, the parties exchanged information regarding class size, scope and damages. Through this process, Plaintiff's Counsel acquired sufficient knowledge and information to assess the merits of the claims and of potential settlement (Murphy Declaration - ¶¶ 3-5).

When the parties reached an impasse in their settlement discussions, they agreed to mediate.  The settlement discussions were successfully concluded with a written term sheet

drawn up by counsel as a result of a lengthy mediation conducted by Terrence White. Once the general terms of the settlement were reached, the parties continued to negotiate the specific provisions and language of the formal agreement over the next several months.

>    6.   *Plaintiff's Counsel Believes That the Settlement is Fair, Reasonable and in the Best Interests of Settlement Class Members*.

The opinion of experienced class action counsel with substantial experience in litigation of similar size and scope is an important consideration. *See, In re Domestic Air Transportation Antitrust Litigation, supra,* 148 F.R.D. at 312; *Andrews v. Ocean Reef Club, Inc.*, 1993 WL 563622, *3 (Fla. Cir. Ct. 1993). At the preliminary approval hearing, counsel for Plaintiff will inform the Court of settlements obtained in other repossession class actions similar to the instant proceeding in both this District and in other jurisdictions [Murphy Declaration - ¶¶ 9-18].

Judges should avoid substituting their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel. *See, Ressler v. Jacobson,* 822 F.Supp. 1551, 1553 (M.D.Fla.1992).[1]   "While the opinion and recommendation of experience counsel is not blindly followed by the trial court, such opinion should be given great weight in evaluating the proposed settlement." *Flinn v. FMC Corp.,* 528 F.2d 1169, 1173 (4th Cir.1975). "Where experienced counsel have engaged in arm's length negotiations to reach a settlement, the trial court is entitled to rely on their judgment." *Spencer, supra,* ¶93,124 at 95,530; *see also Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)(court should defer to judgment of experienced counsel who has

---

[1] The Court must also avoid judging the settlement against a hypothetical or speculative measure of what might have been achieved by the negotiators. "Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of facts and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlement." *See, Officers for Justice v. Civil Serv.Comm'n,* 688 F.2d 615, 625 (9th Cir.1982).

competently evaluated the strength of his proofs); *Enterprise Energy, supra,* 137 F.R.D. at 247

(endorsement of settlement by experienced counsel supported fairness, adequacy and

reasonableness of settlement); *Ohio Public Interest Campaign v. Fisher Foods,* 546 F.Supp.1, 11

(N.D.Ohio1982) (opinion of counsel to be given great weight by the Court). Indeed, there is a

"strong initial presumption" that an arm's length settlement arrived at by experienced counsel,

and premised upon sufficient information to evaluate the claims at issue is fair. *See, Feder v.*

*Harrington,* 58 F.R.D. 171 (S.D.N.Y.1972).

Here, the settlement is the product of extensive, adversarial, arm's length negotiations

conduct by counsel experienced in all aspects of class action litigation, and particularly

experienced in UCC matters. As discussed above, the proposed settlement offers the Settlement

Class a substantial portion of the relief sought and which could be obtained at trial. Thus, in

counsel's view, the proposed settlement is fair, reasonable and in the best interest of the

Settlement Class.

By reaching the proposed settlement, the parties have dispensed with the need for further

protracted litigation. Upon final approval, if given, the proposed settlement will have established

a significantly faster and guaranteed favorable resolution of Settlement Class members' claims

against CitiFinancial.

*7.  The Parties Negotiated the Proposed Settlement in Good Faith.*

The proposed settlement was negotiated at arm's length, after months of intensive and

protracted negotiations, and additional, detailed settlement negotiations which were conducted

before the final terms of the Settlement Agreement were reached. Thus, there is not even a hint of

bad faith or collusion surrounding the proposed settlement to undermine its fairness or adequacy.

*See, Cleveland Browns, supra,* 758 N.E.2d at 310.

## **IV. CONCLUSION**

For the foregoing reasons, Plaintiff, Samuel Ross, on behalf of himself and all others similarly situated, would respectfully request this Court grant the Unopposed Motion for Preliminary Approval of the Class Action Settlement Agreement and for such other and further relief as justice may require.

LAW OFFICE OF ROBERT W. MURPHY

/s/ Robert W. Murphy
Robert W. Murphy
Florida Bar No. 717223
1212 SE 2nd Avenue
Fort Lauderdale, FL 33316
(954) 763-8660 Telephone
(954) 763-8607 Fax
Email: rphyu@aol.com
and rwmurphy@lawfirmmurphy.com

John Roddy, *Pro hac vice*
BAILEY & GLASSER, LLP
125 Summer Street, Suite 1030
Boston, MA 02110
(617) 439-6730 Telephone
(617) 951-3954 Fax
Email: jroddy@baileyglasser.com
COUNSEL FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 6, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on R. Frank Springfield, Esquire, Burr & Forman LLP, 200 S. Orange Avenue, Suite 800, Orlando, FL 32801; John R Chiles, Esquire, Burr & Forman LLP, 350 E. Las Olas Blvd., Suite 850, Fort Lauderdale, FL 33301; and  John Roddy, Esquire, Bailey & Glasser, LLP, 125 Summer Street, Suite 1030, Boston, MA 02110, in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.


/s/ Robert W. Murphy
Attorney