**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**CASE NO.: 3:12-cv-1173-TJC-PDB**

SAMUEL ROSS, individually, and on
behalf of all others similarly situated,

      Plaintiff,

v.                                                                    **<u>CLASS ACTION</u>**

CITIFINANCIAL AUTO, LTD.,

      Defendant.

_____/

**<u>MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS</u>**
**<u>AND APPROVAL OF CLASS REPRESENTATIVE INCENTIVE AWARD</u>**

      Plaintiff, Samuel Ross, an individual, on behalf of himself and all others similarly

situated ("Class Representative"), pursuant to Rule 54, Fed.R.Civ.P., respectfully moves this

Honorable Court for order awarding attorneys' fees and costs to counsel for the Class, and

approving the Class Representative incentive award, and in support would show as follows:

      1.      In the instant action, the Class Representative filed a Complaint against

Defendant, CitiFinancial Auto, Ltd. ("CitiFinancial"), for violation of Article IX, Part VI of the

Uniform Commercial Code ("UCC"), with respect to the repossession notice practices of

CitiFinancial.

      2.      After extensive arm's length settlement negotiations, the parties reached a Class

Action Settlement Agreement ("Settlement Agreement"), a copy of which has previously been

filed with the Court.

3.      On August 11, 2014, this Court entered an Order Granting Preliminary Approval of Class Settlement ("Preliminary Approval Order") [DE 50].

4.      The Settlement Agreement provides for the following benefits to the Class:

> Waiver of Deficiency: CitiFinancial shall waive deficiencies arising from the RISCs of the respective class members for the financing of motor vehicles [Settlement Agreement - ¶ 8.5].  The aggregate balance of the deficiencies ("Waived Deficiencies") of the Class Members is Twelve Million Two Hundred Nine Thousand Four Hundred Thirteen and 96/100ths Dollars ($12,209,413.96) (without accrued interest).

> Notification to Credit Reporting Agencies: CitiFinancial shall request that the credit reporting agencies ("CRAs") delete the tradelines related to the finance agreements at issue in this matter from the credit reports of the Settlement Class Members. [Settlement Agreement - ¶ 8.1].

5.      Pursuant to ¶9 of the Settlement Agreement, the parties agreed to the following with respect to attorney's fees and costs to be awarded to Class Counsel:

**Class Representative Compensation and Litigation Expense**

9.   The Parties understand that Class Counsel intends to apply for an award of attorneys' fees and expenses in an amount not to exceed $217,500 (approximately 1.78 percent of the total benefit the class derives from the Settlement). As of April 8, 2014, this benefit is $12,209,413.96, the waived deficiency balances previously owed by Settlement Class members (the "Settlement Credit"). CitiFinancial shall not object to this request for fees and expenses in the stated amount and such amount shall be paid if awarded by the Court subject to the terms of this Settlement. The Parties negotiated attorneys' fees and expenses and CitiFinancial, with the assistance of an experienced mediator, Terrence M. White, agreed to the payment of such fees and expenses as provided for in this Agreement only after reaching agreement upon all other material terms of this Settlement. Any attorneys' fees and expenses so awarded shall not be payable unless and until the Final Order becomes final. Any attorneys' fees and expenses awarded shall be paid by CitiFinancial through Santander within twenty (20) days after the Court approves the Settlement and the Settlement becomes Final. CitiFinancial shall pay the expense of mediation directly to the mediator, Terrence M. White.

("Attorneys' Fee Provision").

6.     Pursuant to ¶10 of the Settlement Agreement, the parties agreed to the following with respect to an incentive award to the Class Representative:

> 10.   Subject to Court approval, Mr. Ross shall be entitled to an award for this litigation of Five Thousand Dollars ($5,000.00) for serving as the class representative. Such payment shall be made within the fifteen (15) days after the Court approves the Settlement and the Settlement becomes Final. Mr. Ross must provide a Form W-9 to the Settlement Administrator prior to having the Class Representative award processed and issued. In exchange, Mr. Ross shall release CitiFinancial and Santander, as set forth below.

> ("Class Representative Incentive Award")

7.     In support of the instant motion, the Class Representative has filed the following:

- Declaration of James A. Kowalski, Jr. as to Reasonable Attorney's Fees ("Kowalski Declaration");

- Declaration of John Roddy in Support of Joint Motion for Final Approval and Motion for Attorneys' Fees and Costs ("Roddy Final Approval Declaration");

- Declaration of Robert W. Murphy in Support of Joint Motion for Final Approval and Motion for Award of Attorneys' Fees and Costs ("Murphy Final Approval Declaration"); and

- Declaration of Samuel Ross in Support of Motion for Preliminary Approval of Settlement ("Ross Declaration").

**LEGAL ARGUMENT**

**I.  THE DETERMINATION OF ATTORNEYS' FEES OF CLASS COUNSEL
SHOULD BE BASED ON THE "COMMON BENEFIT" DOCTRINE.**

**A.  Analysis of Common Benefit Doctrine**

Depending on the nature of the case and the relief obtained, the courts follow two

methods of calculation attorney's fees in class actions: (1) the percentage of recovery, and (2) the

lodestar method. The percentage of recovery method is the favored method of determining

attorney's fees in class actions involving a common fund or benefit. *See*, 4 H. Newberg & A.

Conte, *Newberg on Class Actions,* §4:6 (4th Ed.2003). The approach rewards counsel for success

and penalizes counsel for waste or failure. In such common fund cases, the fees are typically

between 25% to 40% of the available fund.  *See, e.g., Waters v. International Precious Metals

Corporation*, 190 F.3d 1291 (11th Cir. 1999); *Williams v. MGM-Tathe Communications

Company,* 129 F.3d 1026 (9th Cir. 1997). In contrast, the lodestar method is more commonly

applied in statutory fee-shifting cases. *Serrano v. Sterling Testing Systems, Inc.*, 711 F.Supp.2d

402,  2010 WL1924477 (E.D.Pa.2010). *Id*. at 16; *In re General Motors Corp. v. Pick-up Truck

Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 721 (3rd Cir.1995). As the instant action did not

involve statutory fee-shifting, attorney's fees should be awarded based on a percentage of the

common fund or benefit to the Class.

The "common fund" doctrine rests on the foundation that persons who have obtained

benefits from a lawsuit without contribution to its costs are unjustly enriched at the successful

litigant's expense.  *See, e.g., Mills v. Electric Auto-Light Company*, 396 US 375 (1976)[to allow

the others to obtain full benefits from the plaintiff's efforts without contributing equally to the

litigation expense, would be to enrich the others unjustly at the plaintiff's expense"]*; Boeing*

-4-

*Company v. Van Gemert*, 4444 US 472, 1980 ["persons who obtain the benefit of a settlement without contributing to its costs are unjustly enriched at the successful litigant's expense"]; *In re Katrina Canal Breaches Consolidated Litigation*, 2010 WL 2998848 (E.D. La.2010).   In the instant case, the Settlement Agreement has produced significant relief — in the form of over $12 million of Waived Deficiencies together with the clearance of the consumer reports of the Class Members — which justifies an award in accordance with the Attorney Fee Provision of the Settlement Agreement.

Pursuant to the Attorneys' Fee Provision of the Settlement Agreement, Class Counsel seeks an award of attorneys' fees and costs of $217,500 ("Attorney Fee Request"). Class Counsel is mindful that the Settlement Agreement does not provide for payment of money to the Class Members so as to create a "common fund."   However, the award of fees to Class Counsel should be based upon the economic value of the equitable relief under the "common benefit" doctrine (sometimes also referred to as the "substantial benefits" doctrine).   This doctrine, which has been called a logical "corollary" of the common fund doctrine, has been twice embraced by the U.S. Supreme Court and by a number of other courts throughout the country.

In *Mills v. Electric Auto-Light Company*, 396 US 375 (1970), a stockholder's action prevented the distribution of misleading proxy solicitation.   While there was no fee-shifting statute available, and although the action had not created a common fund, the Court nonetheless awarded the stockholder's attorney a fee from the corporation.   The *Mills* Court reasoned that a fee based on the "substantial benefits" to the class should be awarded where:

> [T]he litigation has conferred a substantial benefit to the members of a discernable Class, and where the Court's jurisdiction over such matters of suit makes possible an award that will operate to spread the costs proportionately among them.

-5-

396 U.S. at 393-394; *see also, Hall v. Cole*, 412 U.S. 1 (1973).

Many states have also adopted the substantial benefits/common benefit doctrine. *E.g.*, *Brown v. State*, 565 So.2d 585 (Ala. 1990); *Milsap v. Lane*, 706 SW 2d 378, 288 Ark. 439 (Ark. 1986); *Ginsberg v. Keehn*, 550 So.2d 1145 (Fla. 3rd DCA 1989); *Niece v. Richer*, 428 N.E. 2d 386 (Ind. Cir. Ct. 1981); *Black v. NuAire, Inc.*, 426 NW 2d 203 (Minn. Cir. App. 1988); *Sylvia v. Botsch*, 437 A.2d 313, 121 N.H. 1041 (N.H. 1981); *City National Bank & Trust Co. v. Owens*, 565 2d 4 (Okla. 1977); *Couy v. Nardei Enterprises*, 587 A.345 (Pa. Sup. Ct. 1981); *Hannewald v. Fairfield Communities, Inc.*, 651 SW 2d 222 (Tenn.Ct.App.1983).

## B.  Application of Common Benefit Doctrine to Debt Cancellation

Using the "substantial benefits" doctrine, a fee greatly in excess of that set forth in the Attorneys' Fee Provision of the Settlement Agreement could be justified. *See, Cohen v. Whitman Medical Corporation*, 197 F.R.D. 136 (E.D. Pa. 2000). Indeed, the fees sought by Class Counsel are less than 2% of the Waived Deficiencies, without consideration for the benefit of credit amelioration.

In *Cohen*, the United States District Court for the Eastern District of Pennsylvania considered a fee application by class counsel which requested one third of a $7.3 million common fund — which included $1.3 million in student loan forgiveness.  In approving the fee application by class counsel, the Court stated:

> There are two methods of calculating attorney's fees, the percentage of recovery method and the lodestar method. . . The Third Circuit has explained that "[the] percentage of recovery method is generally favored in cases involving a common fund, and is designed to allow courts to award fees from the fund in a manner that rewards counsel for success and penalizes if for failure. . . whereas, the lodestar method is more commonly applied in statutory fee-shifting cases, and is designed to reward counsel for undertaking socially beneficial litigation cases where the expected relief has a small enough monetary value that a percentage of the

-6-

recovery method would provide inaccurate compensation. The lodestar method is also applied in cases where the nature of the recovery does not allow the determination of the settlement value necessary for the application of the percentage of recovery method. *Id*. The Third Circuit has stated that "it is sensible for a court to use a second method of fee approval as a cross check." <u>Id</u>. Because this case is a common fund case, I find that the percentage of recovery method provides a more appropriate basis for evaluating class counsel's fee petition.

*Id*. at 147.

In applying the percentage of recovery method, the Court began by making a reasonable estimate of the settlement value. As the settlement fund involved both cash and forgiveness of debt, the Court recognized that debt forgiveness "does not have the same value as cash in hand." However, as in the instant case, the settlement involved the clearance of the credit reports of the Class Members. Accordingly, the Court found it reasonable to include debt forgiveness in the total settlement value. *Id*.

Other courts have followed the same "common benefit" analysis in fixing attorney's fees in class actions which involve the cancellation of debt. *In re Sutter Health Uninsured Pricing Cases*, 171 Cal.Rptr.4th 495, 89 Cal.Rptr.3d 615 (Cal.App.3d Dist.2009). In *In re Sutter Health*, a class action was filed alleging that insured patients were provided discounts by the health care provider. On appeal, the appellate court determined that the trial court acted within its discretion in finding that attorney's fees of $4 million to patients' attorneys was not excessive, notwithstanding the fact that the relief to patients was at the most that the hospital writing off $276 million of debt off its books. *Id.* at 630.

The application of the "common benefit" or "substantial benefits" doctrine supports the application for fees by Class Counsel in the instant case. Indeed, Class Counsel would be entitled to a potentially greater fee award but for the agreement to limit the fee and cost application to

$217,500 under the Settlement Agreement.

## II.  THE GUIDELINES OF BOTH THE ELEVENTH CIRCUIT AS WELL AS THE FLORIDA RULES OF PROFESSIONAL CONDUCT SUPPORT THE FEE APPLICATION OF CLASS COUNSEL AS A CROSS-CHECK AGAINST THE COMMON BENEFIT RECOVERY.

### A.  Review of Cross-Checking Procedure

Several courts recommend cross-checking the percentage award by the lodestar award method.  *See, Gunter v. Ridgewood Energy Corporation*, 223 F.3d 190 (3rd Cir. 2000); *Cohen,* 197 F.R.D. at 147.  To be sure, the goal of the Court is to "safeguard the plaintiff's and class members' interests."  *Id.* at 201.

All attorney fee applications should be judged against the factors set forth in Rule 4-1.5(b), Rules of Professional Conduct Regulating the Florida Bar, which provides general guidelines to determine the reasonableness of attorney's fees, including:

1.   The time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

2.   The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;

3.   The fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;

4.   The significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;

5.   The time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;

6.   The nature and length of the professional relationship with the client;

7.   The experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in

the actual providing of such services; and

8.   Whether the fee is fixed or contingent, and, if fixed as to the amount or rate, then whether the client's ability to pay rested to any significant degree on the outcome of the representation.

Rule 4-1.5(b), Rules of Professional Conduct Regulating the Florida Bar

While the "lodestar" method has replaced the older Fifth Circuit balancing test laid out in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th Cir.1974), the Eleventh Circuit has approved consideration of the so-called "Johnson Factors" in determining the reasonable hourly rate. *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir.1988). The "Johnson Factors" mirror the guidelines of Rule 4-1.5(b), Rules of Professional Conduct Regulating the Florida Bar set forth above. Considering each of these factors, it is clear the request by Class Counsel for attorneys' fees under the Attorney Fee Provision of the Settlement Agreement is both reasonable and appropriate.

## B.  Application of "Johnson Factors"

### 1.  Amount Involved and Results Obtained

Class Counsel addresses the fourth factor cited in Florida Rule of Professional Conduct 4-1.5(b) first as both state and federal courts have routinely stated the "degree of success obtained" is the critical factor in determining the reasonableness of a fee award.  *Villano v. City of Boynton Beach*, 254 F.3d 1302 (11th Cir. 2001); *Finch v. City of Vernon*, 877 F.2d 1497 (11th Cir. 1989).

Pursuant to the Class Settlement Agreement, CitiFinancial agreed to waive deficiencies in excess of $12 million in principal and interest and to direct that credit reporting agencies delete adverse credit information concerning the respective account of the Class Members.  As such, the relief to the class is, in a word, outstanding.  This position is especially compelling as

CitiFinancial or its assignees could have sought judgments for deficiencies against the Class

Representative and many of the Class Members.

The size of the recovery is relevant in determining the lodestar fee according to the

United States Fifth Circuit in *Migs v. Pearl Vision*, 135 F.3d 1041 (5th Cir.1998):

> "However, the Supreme Court has held that such a declaration does not alter the
> rule that the plaintiff's monetary success in a private civil rights suit must be the
> primary determinate of the attorney's fees. Where recovery of private damages is
> the purpose of … civil rights litigation, the district court in fixing fees is obligated
> to give primary consideration to the amount of damages awarded as compared to
> the amount sought." *Farar*, 506 U.S. at 114, 113 S.Ct. at 575 (quoting *City of
> Riverside v. Rivera*, 477 U.S. 561, 585, 106 S.Ct. 2686, 2700, 91 L.Ed. 2d 466
> (1986).

The "recovery" of the Class when measured in dollars totals over $12 million. However,

the clearance of the credit reports of the Class with respect to deficiencies has value far in excess

of the aforementioned figure. When the financial impact of improved credit ratings for the Class

Members is considered, the economic value of the settlement is many times greater than the

Waived Deficiencies.

### 2.  Time and Labor Required.

#### a.  Overview of Work Performed

The Fifth Circuit has stated that "[a]lthough the hours claimed or spent on a case

should not be the sole basis for determining a fee, they are necessary ingredients to be

considered." *Johnson,* 488 F.2d at 717. Because auto finance related matters are highly technical,

the amount of time and labor required to be adequately prepared in a case of this type is generally

increased. Adequate preparation mandates a thorough understanding of the operation of the UCC

as well as the way in which vehicles are sold and financed and how deficiencies are collected.

There is a limited amount of case law under the UCC with respect to the ability of

consumers to bring claims for statutory damages on a class basis.  Indeed, Class Counsel are the attorneys of record in nearly every decision in Florida which involved class claims under Article 9, UCC.  Florida law applies a so-called "rebuttable presumption" — that is, a secured creditor could recover a deficiency if it can establish that the sales proceeds are within the range of what would be recovered notwithstanding the non-compliance with the UCC. Thus, Class Counsel needed to be prepared to address the ability of CitiFinancial to defeat a class action based on its apparent ability to enforce deficiencies against members of the Class.

As part of the declarations filed in support hereof (collectively "Class Counsel Declarations"), Class Counsel have provided an account of time spent in the representation of the Class. Time records were made contemporaneously with work performed and were stored in a legal services data storage computer program. As the Class Counsel Declarations demonstrate, in making their respective entries, Class Counsel exercised billing judgment and adjusted the time recorded for factors such as interruptions and any perceived duplication (Murphy Final Approval Declaration - ¶¶ 32-33; Roddy Final Approval Declaration ¶¶ 20-21).

### b.  Summary of Time Expended

The following is a summary of the time expended by the respective attorneys for the Class in this action:

*As to Law Office of Robert W. Murphy:*

Robert W. Murphy :             149.1 hours

*As to Law Offices of Bailey & Glasser LLP:*

John Roddy:                    150.95 hours

It is anticipated that respective counsel will incur an additional 35 hours for Attorney

Murphy and 20 hours for Attorney Roddy to bring the matter to conclusion, including Class Member inquiries and requests for assistance subsequent to final approval. As detailed in the Murphy Final Approval Declaration, based on similar prior class litigation under the UCC, substantial time will be spent by Class Counsel in ensuring that the credit histories of the Class Members are properly amended in accordance with the Settlement Agreement and in addressing the inquiries of Class Members subsequent to final approval [Murphy Final Approval Declaration - ¶¶36-37].

### c. Determination of Reasonable Hourly Rates

Class Counsel submits the reasonable hourly rate for the services of the respective attorneys are $450 for Attorney Murphy and $500.00 for Attorney Roddy. The following is a synopsis of the basis of the hourly rates for the respective attorneys of record in this action:

### As to the Law Office of Robert W. Murphy

Robert W. Murphy - Attorney Murphy has been a member of the Florida Bar for over 27 years. Attorney Murphy has substantial experience in litigating individual class actions under Florida and federal consumer protection statutes, including Article 9 of the UCC.  The customary hourly rate of Attorney Murphy is $450 [Murphy Final Approval Declaration - ¶¶ 16-30].

### As to Law Offices of Bailey & Glasser LLP[1]

John Roddy - Attorney Roddy has been a member of the Massachusetts Bar for more than 34 years. He has substantial experience in litigating class actions under state and

---

[1] As detailed in the Roddy Final Approval Declaration, the law firm of Bailey & Glasser LLP had additional timekeepers for partner Kevin Barrett, Esquire, and paralegal Mary McClay with further legal fees of $6,356.26.

federal consumer protection statutes, including Article 9 of the UCC. Attorney Roddy's hourly

rate is $500 [Roddy Final Approval Declaration - ¶¶ 1-14].

*d. Calculation of Lodestar*

Using the above factors, the lodestar calculation for attorneys' fees for time expended or to

be expended by Class Counsel is as follows:

*As to Law Office of Robert W. Murphy*

184.1 x $450/hour : $82,845.00

*As to Law Offices of Bailey Glasser LLP*

170.95 hours x $500.00 :   $85,475.00

TOTAL:     $168,320.00

### 3.   Novelty and Difficulty of Questions Involved.

While this litigation is certainly not a case of first impression, the novelty of Article 9

class claims under the UCC and other similar statutes is readily apparent by a review of American

jurisprudence. The paucity of reported decisions demonstrates an area of law that is at best

undeveloped.  Indeed, the few opinions that have been published include actions brought by Class

Counsel. *See, e.g., Westlake Financial Services v. Ray*, 923 So.2d 555 (Fla. 4th DCA 2006); *Smith*

*v. Toyota Motor Credit Corp.,* 2013 WL1325460 (Md.D. March 28, 2013)[Maryland repossession

notice class]; *Jackson v. Southern Auto Finance Co.*, 988 So2d 721 (Fla. 4th DCA 2008)[UCC

Article 9 class action]; *Garcia v. United Auto Credit Corp*., 2008 WL 141579, 64 UCC

Rep.Ser.2d 833 (S.D.Fla. 2008) [UCC Article 9 class action]; *Car Now Acceptance v. Block,* 2002

WL32001272 (Ct.Common Pleas, Ohio, 2002). Class Counsel is unaware of few other lawyers in

this District who actively litigate repossession cases — either individually or on a class basis— as

-13-

a routine part of their practice except as co-counsel with Attorney Murphy.

### 4.   Skill Required to Perform the Legal Service Properly.

In considering this factor, the "trial judge should closely observe the attorney's work product, his preparation, general ability before the Court." *Johnson, supra*, 488 F.2d at 718. Class counsel strived to present a high level of work product, preparation and ability.  It is submitted that the matters of record as well as the overall settlement demonstrate this fact clearly.

Class Counsel trusts that the Court will be able to make its own determination of the above factors based on its own observations. Class Counsel would refer the Court to the dicta of *Johnson*:

> The trial judge should closely observe the attorney's work product, his preparation and general ability before the court. The trial judge's experience is gained from past experience as a lawyer and his observation from the bench of  lawyers at work become highly important in this consideration.

Id. at 718.

### 5.   Preclusion of Other Employment by Attorney Due to Acceptance of Case.

"This guideline involves dual consideration of otherwise available business which is foreclosed because of the conflicts of interest which govern representation, and the fact that once the employment is undertaken, the attorney is not free to use the time spent on the client's behalf for other purposes." *Johnson*, *supra*, 488 F.2d at 718. At first glance, it would appear to be unlikely that any conflict would arise from counsel's representation of the Class in this matter which would preclude further opportunities for counsel. However, both attorneys for the Class are members of the National Association of Consumer Advocates ("NACA").  NACA is a nearly two thousand member organization of lawyers who focus on the representation of consumers in

-14-

litigation against law breaking businesses. As a condition of membership in NACA, attorneys agree to refrain from the representation of businesses which are adverse to consumers, such as automobile dealerships and finance companies. Class Counsel are routinely solicited by businesses — including many of the companies which they have sued — for legal representation in both litigation and compliance matters. Class Counsel have refused all such employment, irrespective of the terms of the engagement.

### 6.   Customary Fees

The fee requested by Class Counsel is far below the range of awards previously allowed in class actions by courts in Florida  and other jurisdictions, and is especially appropriate given the results achieved by Counsel. *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir.1991) [11[th] Circuit recognized a 20-30% benchmark]. In previous consumer class actions in this District, the Court has awarded as much as one-third (1/3) of the common fund to class counsel as attorney's fees.  *See, e.g.*, *Atkinson v. Wal-Mart Stores, Inc*., 2011 WL6846747 (M.D.Fla. Dec.29, 2011).

In light of the above, the requested fee award by Class Counsel is well within the range allowed for class actions in this District and in other jurisdictions. *See, e.g. Smith v. FMC Corporation*, 225 F.Supp.2d.707 (S.D.Va.2002)[awarding fees and costs equaling 48.7% of class settlement fund];*Gaskill v. Gordon*, 942 F.Supp. 382 (M.D. Ill. 1996)[awarding 38% of class fund]; *Goodrich v. E.F. Hutton Group, Inc.*, 681 A.2d 1039 (Del.1996)[33% of class fund].

### 7.   Experience, Reputation and Ability of Attorney

As pronounced by the Fifth Circuit, "most fee scales reflecting experience differential with the more experienced attorneys receiving larger compensation." *Johnson,* 488 F.2d 718, 719. As fully detailed in the Class Counsel Declarations, Class Counsel have substantial experience

litigating complex consumer class actions.

### 8.  Nature and Length of Professional Relationship With Client

While it is true that a "lawyer in private practice may vary his fee for civil work in light of the professional relationship with the client with his office," this is not the case here. *Johnson*, 488 F.2d at 719. The instant action is the first matter in which the Class Representative has engaged Class Counsel. Class Counsel represented the Class Representative on a contingency fee basis in a manner which is the same as the majority of the other clients of Class Counsel.

### 9.  Whether the Fee is Fixed or Contingent

As reflected above, Class Counsel was engaged under a contingency fee agreement. No fees or costs have been paid to Class Counsel.

The Law Office of Robert W. Murphy advanced $2,882.31 in costs and litigation expense including filing fees, service of process fees, travel expense, transcripts, expert witness fees, photocopying, postage, parking and electronic research costs (Murphy Final Approval Declaration - ¶40).

The Law Office of Bailey & Glasser LLP advanced $2,375.06 in costs, for filing and service of process fees, travel, photocopying, postage, and other expenses (Roddy Final Approval Declaration - ¶19).

### C.  The Lodestar Cross-Check Confirms the Reasonableness of the Attorneys' Fees Request.

As referenced above, although prevailing jurisprudence — including the Eleventh Circuit — has clearly established a preference for calculating attorney's fees by using the percentage of fund approach, several federal appellate courts have suggested that courts may employ a lodestar cross-check. *In re Rite-Aid,* 396 F.3d 294 (3rd Cir.2005), 305-306. A comparison using the

-16-

lodestar of class counsel demonstrates that the fees requested here are again fair and reasonable. Lodestar "multipliers ranging from one to four are frequently awarded in common fund cases employing the lodestar method." *In re Prudential,* 148 F.3d 283, 341 (3rd Cir.1998).

The Third Circuit has instructed that the "lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. The district court may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite-Aid,* 396 F.3d at 306-07. According to the Court of Appeals in *Rite-Aid,* the "lodestar cross-check" is "not a full-blown lodestar inquiry" and a court "should be satisfied with a summary of the hours expended by all counsel at various stages with less detailed breakdown than would be required in a lodestar jurisdiction." *Id.* (quoting *Report of the Third Circuit Task Force, Selection of Class Counsel,* 28 F.R.D. 340, 423 (2002)).

Using an aggregate lodestar of $168,320 for work performed or to be performed by Class Counsel, the Attorney Fee Request of $217,500.00 by Class Counsel provides a modest multiplier of less than 1.3 and is well within the appropriate range of approval. *See, e.g., Perry*, 229 F.R.D. at 122-23 [approving 1.5 multiplier and recognizing standard range of 1-4]; *Bradburn Parent Teacher Store, Inc. v. 3M,* 513 F.Supp.2d 322 (E.D.Pa.2007) [approving 2.5 multiplier in lodestar cross-check]; *In re Linerboard Antitrust Litig.*, 2004 WL 1221350, *4 [cross-check; approving a 2.6 multiplier]; *NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. at 489 ["multipliers of between 3 and 4.5 have become common"]. To be sure, "the lodestar multiplier aims to account for the continued nature or risk involved in a particular case and the quality of the attorney's work." *Perry*, 229 F.R.D. at 122.

### III.  THE ABSENCE OF OBJECTION TO THE ATTORNEY FEE REQUEST SUPPORTS APPROVAL.

In the instant action, the Court preliminarily approved the Settlement Agreement, which contained as an exhibit a specimen copy of the proposed notice to class ("Ross Class Notice")[DE 42-1 ]. The Ross Class Notice provided plenary information for class members to make informed choices. With respect to attorneys' fees for Class Counsel, ¶ 13 of the Ross Class Notice provided:

### 13.   How will the lawyers be paid? What will the Representative Plaintiff receive? What expenses will be paid?

Class Counsel will ask the Court to approve attorneys's fees and expenses to be paid by CitiFinancial. As fees, Class Counsel will ask the Court to award attorneys' fees and costs in the sum of $217,500 ("Attorney Fee Request"). The Attorney Fee Request represents less than 2% of the value of the total benefit to the Class. Class Counsel contends that the total benefit of the settlement to the Class includes approximately $12,000,000.00 in waived deficiencies and an unknown amount attributable to deletion of adverse information from the Class Members' credit reports. Class Counsel will also ask the Court to approve an incentive award of $5,000 to be paid by CitiFinancial or on behalf of CitiFinancial to the Representative Plaintiff for the time and resources he has spent helping the lawyers on behalf of the whole Class, and to be paid to the Representative Plaintiff in addition to the Settlement Check.

The cost of administering the Settlement, including the expense of sending this Notice and any settlement checks will also be paid by CitiFinancial through Santander.

No Class Member will owe or pay anything directly for the attorneys' fees and expenses or the incentive award, Any award of attorneys' fees and expenses as well as the incentive award will be paid by CitiFinancial.

The Court must approve both the attorneys' fees and expenses for Class Counsel and the incentive award for the Representative Plaintiff. The Court will conduct a hearing on attorneys' fees and litigation expenses at the same time of the final approval hearing.

(Ross Class Notice - ¶13)

As noted, there have been no objections to the settlement or to the attorney's fees request.

This fact supports the approval of the attorney's fees request of Class Counsel. *See, Ressler v.*

*Johnson,* 149 F.R.D. 651 (M.D.Fla.1992); *Barel v. Bank of America*, 255 F.R.D. 393, 404

(E.D.Pa. 2009)[lack of objections by class members supports approval of the request for

attorney's fees]; *Serrano v. Sterling Testing Systems, Inc.*, 2010 WL1924477 (E.D.Pa.2010).

### IV.   THE ATTORNEY FEES SOUGHT BY CLASS COUNSEL ARE THE PRODUCT OF AN ARMS' LENGTH NEGOTIATED SETTLEMENT, AND ARE TO BE  PAID DIRECTLY BY CITIFINANCIAL WITHOUT AFFECTING CLASS RELIEF, AND ARE REASONABLE.

#### A.   The Attorney Fee Request is Based on the Parties' Settlement.

*1. Rule 23(h), Fed. R.Civ.P. Authorizes Agreements With Respect to Attorneys' Fees*

The Attorneys' Fees Provision of the Settlement Agreement was negotiated after the

material terms of the relief to be provided to the Class [Murphy Final Approval Declaration -

¶¶10; 41; Roddy Final Approval Declaration - ¶19].The agreement on fees was the product of a

professional but hard-fought negotiation between the parties. The obligation of CitiFinancial to

pay attorneys' fees is not based on a fee-shifting statute nor is the amount reducing the relief to be

provided to the Class Members under the Settlement Agreement. Rather, it is based on the

agreement of the parties.

Parties to a class action settlement agreement often agree that a defendant will pay a sum

certain in attorney's fees to plaintiff's counsel. Such an arrangement poses no obstacles to court

approval when the amount of the fee is reasonable under the circumstances. Indeed, Rule 23(h)

embodies this principal:

> In an action certified as a class action, the court may award reasonable attorney's fees and non-taxable costs authorized by law ***or by agreement*** of the parties.
>
> Fed.R.Civ.P. 23(h)  [emphasis supplied]

Federal courts at all levels encourage litigants to resolve fee issues by agreement whenever

possible and such agreements are generally entitled to deference. As the United States Supreme Court explained, "[a] request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of the fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also, Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir.1974) ["In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically and professionally arrive at a settlement as to attorney's fees"]. Accordingly, courts are permitted to award attorney's fees and expenses where all parties have agreed to the amount, subject to court approval, especially where the amount is in addition to and separate from the defendant's settlement with the class. *See, e.g., Local 56 United Food & Commercial Workers Union v. Campbell Soup Co.,* 954 F.Supp. 1000, 1005 (D.N.J. 1997) [granting class counsel the maximum amount of fees agreed to by defendant under the settlement agreement, where "class members ... retain all the settlement provides [and] do not lose any of the negotiated benefits on account of an attorney's fee and cost award that equals the "cap" for such award set forth in the settlement"]. Indeed, the Supreme Court has suggested that such agreements be encouraged as a matter of public policy. *See, Hensley*, 461 U.S. at 437.

   *2.  Bargained-For Terms for Reasonable Attorneys' Fees Should Be Adhered To*

The benefit of the fee negotiated by the parties at arms' length is that is sets a market price for  work performed resulting from opposing interests based on real market conditions; defendants have an interest in minimizing the fee whereas plaintiffs have an interest in maximizing it. Negotiations that result in an agreement are informed by, among other things, the parties' knowledge of the work done and result achieved. In *In re Continental Illinois Security Litig.*, 962 F.2d 566 (7th Cir.1992), the Seventh Circuit endorsed such a market-type based approach to

valuing fee requests. According to Judge Posner, "it is not the function of judges in fee litigation to determine the equivalent of the medieval just price." *Id*. at 568. Moreover, "[i]t is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by the court order." *Id.* "The object of awarding reasonable attorney's fees ... is to give the lawyer what he would have gotten in the way of a fee in arms' length negotiation, had one been feasible." *Id.* at 572.

### B. The Requested Attorneys' Fees Will Not Cause a Reduction of Class Benefits.

Additionally, as explained in *McBean v. City of New York*, 233 F.R.D. 377 (S.D.N.Y. 2006), a court need not review the application for attorney's fees at a heightened level of scrutiny where, as here, the parties have contracted for an award of fees that would not be deducted from the common fund. "If money paid to the attorneys comes from a common fund, it is therefore money taken from the class," the *McBean* court reasoned, "then the court must carefully review the award in order to protect the interest of the absent class members." *Id.* at 392 (citing *Walmart Stores, Inc. v. Visa USA, Inc.*, 392 F.3d 96, 123-24 (2nd Cir.2005) and *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2nd Cir. 2000). The *McBean* court further stated that "[i]f, however, money paid to attorneys is entirely independent of money awarded to the class, the court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between the attorneys and the class members." *Id.* The *McBean* court concluded the parties agreement as to attorneys fees was objectively reasonable because it was the product of arms' length negotiations. *Id.*

Like the case here, a true arms' length negotiation between competing interests indicate the settlement was fair and reasonable. In *In re First Capital Holding Corporation Financial*

-21-

*Products Securities Litig.*, MDL No.901, 1992 WL226321, at 4 (C.D.Cal., June 10, 1992), *appeal dismissed*, 33 F.3d 29 (9th Cir.1994), the district court approved a negotiated fee of $8 million. That district court found:

> The fee was negotiated at arms' length with sophisticated defendants by the attorneys who were intimately familiar with the case, the risks, the amount and value of their time, and the nature of the result obtained for the class. Where there is such an arms' length negotiation and there is no evidence of self-dealing or disabling conflict of interest, the Court is reluctant to interpose its judgment as to the amount of attorney's fees in the place of the amount negotiated by the adversarial parties in litigation.
>
> *Id*.

The rationale espoused by the Seventh Circuit and other courts applies equally here. CitiFinancial sought to minimize the fees that it would agree to pay in addition to the benefits that CitiFinancial would provide to the Class. Therefore, CitiFinancial had a keen interest in negotiating the smallest amount that CitiFinancial would have to pay. Class Counsel, on the other hand, have negotiated the best settlement that Class Counsel could obtain for the Class, and wish to receive full compensation, as the law encourages undertaking this litigation based on results obtained and devoting the resources and skill necessary to bring the case to a successful conclusion.

### C.   Reduction of the Fee Application Will Not Increase Class Benefits.

Finally, even if the Court were to approve less than the agreed-upon amount of attorneys' fees, such a ruling would not confer a greater benefit upon the Class but would, rather, only benefit CitiFinancial. Thus, this Court should give the agreed-upon fee deference and approve the amount CitiFinancial has agreed to pay under the Settlement Agreement.

### V.  THE CLASS REPRESENTATIVE INCENTIVE AWARD SHOULD BE APPROVED TO COMPENSATE THE NAMED PLAINTIFF FOR HIS SERVICES AS CLASS REPRESENTATIVE.

Pursuant to the Settlement Agreement, CitiFinancial has agreed to pay the sum of Five Thousand Dollars ($5,000) to Mr. Ross for his services as the Class Representative.  Mr. Ross has been involved in all aspects of the litigation from pre-suit conferences to attendance at a day-long mediation. Indeed, the Court may recall the attendance of Mr. Ross at the hearing on Defendant's Motion to Dismiss in August, 2013. Unless health concerns interfere with his ability to travel, Mr. Ross intends to also attend the final approval hearing on December 19, 2014.

"Other courts consistently approve incentive awards in class action lawsuits to compensate named plaintiffs for the services they provide and burdens they shoulder during litigation." *Camp v. Progressive Corp*., 2004 WL2149079 at*8 (E.D.La.2004); *see, also Carrabba v. Randall Food Markets, Inc.*, 191 F.2d 815, 835 (M.D.Tex.2002). Moreover, under circumstances where a private class action suit serves the need to enforce laws "designed for the protection of the public," "[c]ourts have found it appropriate to especially reward named class plaintiffs for the benefits they have conferred."  *M.W. Princess Cruise Lines*, 513 F.Supp.2d 1334, 1344 (S.D.Fla.2007).

Based on prior awards, the amounts requested here are consistent with or below the amounts typically rewarded in similar litigation. *See, e.g., Pinto v. Princess Cruise Lines, Ltd.,* 513 F.Supp.2d 1334 (S.D.Fla. 2007) [incentive award of $7,500; *Camp*, 2004 WL2149079 at*7 [awarding fees of up to $10,000 to each named plaintiff]; *In re Lease Oil Antitrust Litig.II*, 186 F.R.D.403, 449 (S.D.Tex.1999)[$10,00 incentive award]; *In re Granada Partnership Securities Litig*., 805 F.Supp 1236, 1247 (E.D.Tex.1992)[service award of $5,000].

Mr. Ross has previously submitted his Declaration in Support of Motion for Preliminary Approval which details his involvement in the instant litigation. His willingness to devote his time

and energy to prosecuting the representative action lead to substantial benefits for the Class he represents, and in consideration of the overall benefit, the Class Representative Incentive Award should be approved.

## VI.   CONCLUSION

Based on the foregoing, Class Counsel respectfully requests this Court:

A.     Approve the payment by CitiFinancial of $217,500 in attorneys' fees and costs to Class Counsel;

B.     Approve the payment by CitiFinancial of an incentive award to the Class Representative in the amount of $5,000;

C.     And for such other and further relief as justice may require.

LAW OFFICE OF ROBERT W. MURPHY


/s/ Robert W. Murphy
Robert W. Murphy
Florida Bar No. 717223
1212 SE 2nd Avenue
Fort Lauderdale, FL 33316
(954) 763-8660 Telephone
(954) 763-8607 Fax
Email: rphyu@aol.com
and rwmurphy@lawfirmmurphy.com

John Roddy, *Pro hac vice*
BAILEY & GLASSER, LLP
125 Summer Street, Suite 1030
Boston, MA 02110
(617) 439-6730 Telephone
(617) 951-3954 Fax
Email: jroddy@baileyglasser.com

COUNSEL FOR PLAINTIFF

-24-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 9, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on R. Frank Springfield, Esquire, Burr & Forman LLP, 200 S. Orange Avenue, Suite 800, Orlando, FL 32801; John R Chiles, Esquire, Burr & Forman LLP, 350 E. Las Olas Blvd., Suite 850, Fort Lauderdale, FL 33301; and  John Roddy, Esquire, Bailey & Glasser, LLP, 125 Summer Street, Suite 1030, Boston, MA 02110, in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

/s/ Robert W. Murphy
Attorney